# GEORGE R. H. HUGHS *et al.*

## *v.*

# RICHARD B. WASHINGTON *et al.*

65   245
30a  183
65   245
31a  212
65   245
38a  574
65   245
42a  660
65   245
155  152
44a  146
65   245
95a  ²429
65   245
e213 ⁴340
114a ⁴494

1. CHANCERY PRACTICE—*decree after destruction of the evidence, before it is supplied.* Where the chancellor, after a hearing of the evidence on file, announced his conclusions, but, before any decree was signed or filed, the records and all the pleadings and proofs were destroyed by fire, and the complainants had supplied the pleadings, the defendants asked to have the entering of final decree postponed until they could supply the evidence upon which it was based, which motion was denied, and the court rendered a final decree against the defendants, from his recollection of the destroyed evidence: *Held*, that the court erred, and that it should have allowed a reasonable time for the defendants to have supplied the evidence before passing the decree, as that was the only means by which the defendants could make their right of appeal availing.

2. SAME—*preserving the evidence.* The practice in the courts of chancery in this State, dispensing with the necessity of embodying the evidence in the decree, or its substance, as required under the English system, does not, however, dispense with the necessity of preserving the evidence in the record upon which the decree is based.

3. On appeal from a decree, each party has the right to rely upon the evidence heard in the court below, to test the correctness of the conclusions and findings of the court, and the appellate court will look into the record to see whether the evidence warranted the court below in finding the facts stated in the decree. The appellate court will be guided by the evidence, and not by the findings of the inferior court.

4. DECREE—*when it is to be considered as entered.* Under our practice in chancery, the decree is inchoate until it is approved by the chancellor and filed for record, or shall be recorded, which answers to the passing and entering it, in the English court. The mere oral announcement by the chancellor of his decision, and the grounds upon which it is based, or reducing them to writing, is no more than the minutes, in the English practice. Until the final decree has been filed or recorded, the chancellor may alter, amend, change, or even disregard, all he has said in his minutes.

5. REHEARING *in chancery.* Before the final decree is filed for record, or is recorded, the chancellor, on his own motion, may order a rehearing in a chancery cause; but after the decree is spread upon the records, the whole matter is beyond his control, unless it be upon a bill of review, or a bill to impeach the decree, or some such subsequent proceeding. It is then, and only then, that it is the decree of the court and *res adjudicata.*

APPEAL from the Circuit Court of Cook county; the Hon. WM. W. FARWELL, Judge, presiding.

Mr. BENJAMIN D. MAGRUDER, Mr. GEO. F. BAILEY and Mr. WM. L. MITCHELL, for the appellants.

Messrs. McCAGG & FULLER, and Messrs. GOOKINS & ROBERTS, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

These cases present substantially the same questions, and we, therefore, consider them as one. They were brought by the heirs of John A. Washington against George R. H. Hughs and the heirs of Sanderson Robert. The bills were filed to set aside and annul contracts of sale of large and valuable real estate in the city of Chicago, by Hughs, as the agent of Washington's heirs, to Robert. The ground alleged for rescinding the contract was fraud.

The cases were heard together, in the circuit court of Cook county, on the 6th day of May, 1871. The evidence was very voluminous, and consisted largely of letters sent and received by the various parties, depositions and other documentary evidence.

After the hearing was had, it is claimed that the court below decided the cases in favor of the complainants, but, before any decree was rendered or enrolled, the fire of October of that year destroyed the court house and all the papers in the cases, both pleadings and evidence.

Counsel agreed upon and restored the pleadings in the cases. The defendant then made a motion for time to retake and restore all of the destroyed evidence, and urged their right to have the evidence restored and on file before a decree should be passed and filed for record or recorded.

The motion of the defendants was denied, and the court, from memory of the evidence, pronounced a decree in each case, and they were duly enrolled and became final. From

that decree the defendants appeal, and assign the refusal of the court to stay the rendition of the decree until the evidence could be restored, as one of the errors in the case; and, from the view we take of the case, we deem it unnecessary to consider any other.

According to the ancient practice in the English court of chancery, the decree recited at length the entire pleadings in the case, and the substance of the evidence contained in the depositions. That practice has been slightly modified in that court in modern times, but its decrees still contain full recitals. In our courts of chancery, the practice has permitted, but not required, such recitals, especially of the evidence. The practice has obtained neither in Great Britain nor this country to set out the depositions in full, but simply to recite the substance of the evidence they contain pertinent to the issue.

As the practice in chancery has always required the evidence to be in writing, or if oral, to be reduced to writing, and preserved in the record, it is apparent that the old practice of embodying it in the decree was not material, as it could at all times be referred to for the purpose of seeing upon what the decree was based, and whether it was sustained by the evidence; and hence, our practice dispensed with embodying it in the decree. But the practice, as modified, does not dispense with the absolute necessity of preserving the evidence in the record. *White* v. *Morrison,* 11 Ill. 361; *Wilhite* v. *Pearce,* 47 Ill. 413; Hill's Ch. Pr. 319, and numerous other cases, recognize the rule.

On an appeal from the decree, each party has the right to rely upon the evidence heard in the court below, to test the correctness of the conclusions at which the court has arrived; and, in such a case, the finding of the facts in the decree will be controlled by the evidence in the record, where it appears that it has all been preserved. The appellate court will look into the record to see whether the evidence warrants the court in its action in finding the facts stated in the decree, and if,

248          HUGHS *et al. v.* WASHINGTON *et al.*          [Sept. T.,

Opinion of the Court

from all the evidence that was heard, it appears the chancellor erred in the finding of the facts, the appellate court will disregard the findings, and will be controlled by the evidence. Under the ancient practice, the decrees in these cases would have contained a complete record of the case, and from it alone the appellate court could have determined whether error had intervened; and if the evidence had been preserved in the record, the same result would follow where a complete record is presented for consideration. But in the position the case now occupies, the defendant has no power to show that the facts found by the chancellor in the decree are not warranted by the evidence.

It is an undoubted right, enjoyed by every litigant, to have the judgment or decree to which he is a party passed upon and reviewed by an appellate court. This, the constitution has guaranteed to him; nor can the courts, by rules of practice, deprive him of the right, or materially impair its efficiency. And, in all common law cases, under our statute, it is the duty of the party desiring to have the case reviewed on the evidence, to preserve it in the record, or the presumption will be indulged that the court below acted properly in its decision. Not so with a decree, as no presumption is indulged beyond the extent to which it is sustained by the proofs appearing in the record. Hence, it devolves upon the party in whose favor it is rendered to preserve evidence that will sustain the decree, or it must find that facts were proved that will sustain the decree, or it will be reversed.

Did the court below act prematurely in rendering these decrees before the evidence was restored?

It is contended that inasmuch as the chancellor had heard the evidence, and had announced what his decision would be, and had written out a statement of the grounds for the decision, it must be considered that the case was finally decided, and nothing remained but the formal matter of drawing and passing the decree. This is manifestly not the correct view of the question. Under the English practice, after the

hearing is had, the chancellor pronounces his decree, and the registrar takes minutes of it, and they are usually read over by him to the parties, or their solicitors, and copies of such minutes are generally applied for and furnished to the parties. If not satisfactory, by reason of their uncertainty, or that anything has been omitted, and the registrar refuses to correct them, application may be made to the court to correct them. After the minutes are settled, the decree is then drawn up by the registrar, and delivered to the party who demanded it. "The decree having been returned, and an office copy taken by the adverse party, the next step to be taken is to have it passed and entered; till which is done, the decree is only *inchoate.*" 2 Danl. Ch. Pr. 670. But this practice has not, in form, obtained in this State.

But our practice is, in principle, the same. The decree is *inchoate* until it is approved by the chancellor and filed for record, or shall be recorded, which answers to the passing and entering it, in the English court. The mere oral announcement of the chancellor of his decision, and the grounds upon which it is based, or the reducing them to writing, is no more than the minutes taken, in the English practice. The whole matter is completely under the control of the chancellor until the final decree has been filed or recorded. Until that time, he may alter, amend, change, or even disregard, all that he had said in his minutes; and if, upon further reflection, he became satisfied his conclusions were wrong, it would be his duty to reverse his announcement, and to decree as he was convinced the equities of the case required; or if, upon further reflection, he should doubt the correctness of his conclusion, he has the undoubted right to order a rehearing, on his own motion, at any time before he has passed the decree, and it has been filed for record, or has been spread upon the record. But after that is done, the whole matter is beyond his control, unless it be on a bill of review, or a bill to impeach the decree, or some such subsequent proceeding. It is

then, and not till then, that it is the decree of the court, and is *res adjudicata.*

There was, then, no decree of the court until it was approved and filed for record, or was recorded; and that was the time the case was decided and the decree was rendered; and there was at that time, as a matter of fact, no evidence upon which to base the decree. Had the fire occurred, and the papers been destroyed before the court heard the evidence read, no one would pretend the court could have, after its destruction, rendered a decree until the testimony was restored, or if the evidence had been but partly read to the court, the same would be undeniably true; and we presume it would not be claimed that the court could have proceeded to decree, had the evidence been destroyed after it was heard by the court, and before he had announced what decree he intended to render; and, as we have seen, that announcement concluded no one, nor did it legally bind the court to adhere to the announcement.

The case, it is true, was before the court for decision, but was not finally decided until the decree was filed for record; and we have seen that there was no evidence at that time upon which to base the decree.

The court below should have allowed the evidence to be supplied before the decree was passed and filed. It was the only means by which their right of appeal could be rendered availing to the parties.

The destruction of the evidence was occasioned by one of those public calamities for which the parties were in nowise responsible; and such being the case, neither of them should be prejudiced by it, beyond what can not be repaired.

We are clearly of opinion that the court below erred in rendering the decree until the evidence was restored; and, for that reason, the decree of the court below must be reversed and the cause remanded, with leave to appellants to restore the evidence, and, for that purpose, the court below will give them a reasonable time.

*Decree reversed.*