## BENONI S. GREEN ET AL.
### v.
## HOOD, BONBRIGHT & CO. ET AL.

*Limited Partnerships—Insolvency of—Preferences — Costs— Fees — Practice.*

1. Upon a bill filed to set aside judgments by confession against a limited partnership and to subject the firm property to payment of debts, this court holds that the evidence fully established the fact that the judgments complained of were confessed in contemplation of insolvency and for the purpose of preferring certain creditors, and were contrary to Sec. 22, of Chap. 84, R. S.

2. The cutting up of claims in the case presented into notes of the amount of $200 each, upon which judgment was taken in a justice's court, was for the purpose of preferring creditors and contrary to said section.

3. Likewise as to judgments taken in justice's court on claims of less than $200 under the same circumstances.

4. When parties are contending for priority as to the assets of an insolvent firm, one set of creditors can not be compelled to pay a *pro rata* share of fees of solicitors for complainants in a bill adverse to them, or in which they do not choose to join.

5. A fee of $25 was erroneously allowed to a special master for drawing a decree in the case presented.

6. The fact that parties holding judgment by confession sought to secure a preference contrary to the statute and failed, is no reason why they should be postponed to other creditors.

7. A purchaser of claims against the insolvent firm at a discount, held, entitled to hold them at their face.

### [Opinion filed February 21, 1889.]

APPEAL from the Circuit Court of McLean County; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. KERRICK, LUCAS & SPENCER, for judgment creditors.

Mr. EDMUND O'CONNELL, for Harry N. Woods.

Mr. JOHN E. POLLOCK, for appellees.

WALL, P. J. This was a bill in chancery filed in the Cir-

cuit Court of McLean County by Hood, Bonbright & Co., for the purpose of setting aside certain judgments by confession against "Harry N. Woods," a limited partnership, and to subject the property of said firm to the payment of the debts of said firm, including the demand held by the complainants. It appears that said limited partnership was formed in October, 1886, and was composed of Harry N. Woods, the general partner, and Benoni S. Green and Frank D. Marquis as special partners.

The business was merchandising in dry goods in the city of Bloomington, and was carried on until the 12th of August, 1887, when judgments by confession were entered in favor of the People's Bank, Charles S. Jones, Benoni S. Green and Mary E. Waters. On the 13th of August a judgment was confessed in favor of W. O. Davis. These judgments were all entered upon judgment notes and aggregated over $10,000. Executions were issued and placed in the hands of the sheriff, and were levied upon the entire stock of the firm. The sheriff advertised the stock for sale on the 25th of August. The bill averring all these facts and that the judgments were confessed in contemplation of insolvency, and for the purpose of preferring the creditors therein over other creditors, sought a decree declaring the judgments void against other creditors, praying for an injunction and receiver, and that the affairs of the partnership might be wound up and the proceeds distributed "*pro rata* among the creditors joining in this suit." An injunction was obtained on the 20th of August, 1887, restraining the sale of the goods, and restraining the delivery of the goods to any persons whomsoever, and enjoining said Harry N. Woods, Benoni S. Green and Frank D. Marquis from making any disposition of the assets of the firm. A motion to dissolve the injunction was heard in vacation and denied, and on the first day of the September term of the McLean Circuit Court, which was the 12th day of September, 1887, a receiver was appointed and the sheriff was ordered to deliver the goods to the receiver, who afterward, under an order of the court, sold the goods for $11,274.45, which money remained in the hands of the receiver, subject to the order of the court.

After the motion to dissolve the injunction was denied the said Harry N. Woods at the request of Mr. Lucas, counsel for the creditors, who had obtained said judgments, executed notes for $200 each, in such number as would amount to the face of said judgments. This was done at the office of Mr. Lucas one evening about nine o'clock, and a justice of the peace who was present issued a summons upon each one of said small demands so created, and delivered the same to a constable who was also present, and the constable then proceeded to serve said writs upon said Harry N. Woods.

Judgments were obtained in these suits, and afterward new suits were brought upon said judgments, and new judgments were obtained upon the same causes of action on the morning of the 12th of September, and executions were issued thereon several hours before the appointment of the receiver. After the injunction issued, a number of other judgments had been obtained before the same justice of the peace in favor of the Chicago Rubber Cloth Co., Richardson Silk Co., Brown, Durrell & Co., and some seventeen or eighteen other parties holding claims against said firm. These claims were all purchased by Mr. Lucas from the parties holding the same, at the rate of forty cents on the dollar, with one exception, for which he paid fifty cents. They were, most of them, within the jurisdiction of a justice of the peace, but those which were larger, four in all, were cut up into small sums of $200 or less, and so all these claims were placed in judgments before a justice of the peace as already stated.

In the order appointing a receiver there was a provision protecting all liens which might then exist against the property. It is averred and probably with truth, that neither the court nor the counsel for complainants in the bill was aware of the existence of those judgments before the justice, when the order appointing the receiver was made, and it is apparent that the proceedings resulting in those judgments had been carried on in the most quiet manner, and that said Harry N. Woods readily did whatever Mr. Lucas may have required or suggested in the premises. So also of the justice of the peace and the constable. During said Septem-

ber term these last named creditors whose claims had been so assigned and put in judgment, filed their petition and obtained leave to come into the case as defendants. They then answered and filed cross-bills, setting up their judgments as prior liens. Similar answers and cross-bills were filed by the original defendants.

John V. Farwell & Co., Frank DeLanna & Co. and other creditors became co-complainants in the original bill, and at the November term, 1887, a supplemental bill was filed setting up all the matters above stated, charging that the judgments before the justice were obtained collusively and contrary to the form and effect of the injunction; that the claims bought up at a discount were held for the benefit of Green and Marquis, and that for these reasons the said judgments should be disregarded and held for naught as against the complainants, and praying for a distribution of the funds in the hands of the receiver according to the prayer of the original bill. At the April term, 1888, a decree was entered setting aside the liens of all of said judgments, and ordering a distribution of the funds to such of the creditors as proved up their claims, subject to the prior liens of two creditors whose claims are not controverted. The claims of all creditors, complainant and defendant, were proved up, and all were permitted to share *pro rata*, except that the creditors whose claims were assigned to Mr. Lucas, were required to contribute *pro rata* with the complainants in paying a fee of $500 to the solicitor of complainants. Each side prayed an appeal to this court, but the appeal of defendants only was perfected. Errors and cross-errors have been assigned, and such of these as are urged in the respective briefs will be disposed of.

The first point presented by appellants is as to the validity of the judgments by confession entered on the 12th of August. Sec. 22 of Chap. 84, R. S., relating to the subject of limited partnership provides as follows: "It shall not be lawful for any such partnership nor any member thereof, in contemplation of bankruptcy or insolvency, and with the intention and for the purpose of paying or securing any one or more of their creditors in preference to any other of their creditors, to make

any sale, conveyance, gift, transfer or assignment of their property or effects, or to confess any judgment or to create any lien whatsoever upon their property or effects, and every such conveyance, gift, transfer or assignment involving such judgment or other lien, shall be and the same is hereby declared to be utterly void." The judgments in favor of Mr. Green were on judgment notes dated July 30th and August 1, 1887. The note dated August 1st was for $2,700, and was in renewal of a similar note given soon after the firm was established in October, 1886. The judgments in favor of the People's Bank were on judgment notes signed by Harry N. Woods and Benoni S. Green, dated at different times between May 25 and August 8, 1887. Some, if not all of these, were also renewals of previous judgment notes given for money loaned in October, 1886. The notes of C. S. Jones were given August 9th and 12th. These notes were signed by B. S. Green also, as surety. These notes were given in lieu of other notes, not judgment notes, previously held by Mr. Jones, and the arrangement was made at the instance of Woods and Green, at whose suggestion they were placed in the hands of Mr. Lucas, who was not the attorney of Mr. Jones. At the same time the other notes held by Green and the bank were placed with him for the purpose of having judgments entered thereon. Jones and Woods were related by marriage and were on friendly terms. The note held by Mary E. Waters was dated August 9, 1887. The note held by W. O. Davis was dated August 13, 1887, and payable one day after date. All the other notes were payable thirty days or longer from their dates. There was considerable evidence tending to show that these note holders all stood in close relations to each other and to the debtor firm. Green was more interested than any one else, for he was not only a special partner but he was on nearly all the paper not payable to himself.

He stood well at the bank where his credit was such that he was not required to give a judgment note, and it is pretty clear that he was managing the whole of this affair, and when he thought the time had come to place the notes in judgment it was done. The bank knew for a considerable time that the firm was in

an unhealthy condition financially, and as Green was on the paper it held, he was expected to take such course as he might deem advisable. There can be no doubt that these confessions were in contemplation of insolvency and for the purpose of preferring the creditors named therein, and that they are within the inhibition of Sec. 22. It is true some of the judgment notes were renewals of other such notes, and it is also true that it is legitimate for a debtor ordinarily to give such paper, but it is contrary to the policy of the statute for such a firm to give a preference when it is in contemplation of insolvency; and when it is remembered that no such notes were given to its other creditors, that these creditors occupied peculiar positions of advantage, and that all of these notes were given at a time when the firm, as well as the holder of the notes, knew that the crash must come very soon, there seems to be but one conclusion consistent with the proof.

The next question is as to the effect of the judgments before the justice of the peace on the small notes given for these claims and those rendered upon the claims assigned to Mr. Lucas. It will be observed that there is nothing in the statute to prevent a creditor from suing a limited partnership and availing himself of the benefit of any lien that he may thus obtain. If the debtor is failing, on the verge of bankruptcy, the creditor may still sue; and so long as his proceeding is hostile, and the lien secured is not due to the assistance or collusion of the debtor, the law will protect it, unless the *res* has already come under the jurisdiction and control of the courts in other proceedings to settle and adjust the partnership affairs. This is the rule as announced in New York, of whose statute ours is a copy. Van Alstyne v. Cook, 25 N. Y. 492; Bates on Limited Partnership, 183. In New York, the right of a creditor at large who has not obtained judgment and execution to apply for enforcement of the trust in respect of the partnership estate, is well settled. The bill must be on behalf of himself and all creditors, and allege insolvency, and may restrain the partners from disposing of the assets contrary to law, and ask for a receiver. Ib. 184, and cases there cited. We think it too clear for discussion, that the proceedings

whereby the claims of the bank and Green and others who obtained judgments by confession, were cut up into small claims in order to permit judgments to be taken before a justice of the peace, were also in violation of Sec. 22. The manifest and only object was to give a preference. There could be no other object, and no amount of denial from the parties engaged in it could be accepted to the contrary.

As to the effect of the judgments obtained upon the other claims held by Mr. Lucas, the aspect is somewhat different. The master in his report found that Mr. Lucas had purchased the claims for forty cents on the dollar and (by arrangement with Harry N. Woods wherever the claim exceeded the jurisdiction of the justice) reduced them to judgment in the names of the creditors for the full amount before a justice of the peace after the service of the injunction and before the appointment of the receiver, and that executions were issued thereon before said appointment, and that the active parties in reducing these claims to judgment were Harry N. Woods and one of the counsel for defendants in the original bill, who had full knowledge of the injunction, and that it was an effort to dispose of the assets of the partnership by creating liens thereon in favor of the purchaser holding said claims, and that, as against complainants, no liens were thereby created. Exceptions were taken to the report of the master and overruled, and while the errors assigned question the ruling of the court as to the lien of these judgments, there is no discussion as to the propriety of this finding by the master with respect to the facts. Upon reading the abstract we are of opinion the evidence justified the finding. The injunction restrained the defendants, of whom Woods was one, from selling, assigning, or in any manner disposing of any of the assets of the partnership. As to the claims which were within the jurisdiction of a justice, there was no occasion for any active aid from Woods, but as to those which were too large and had to be split up into sums of $200 or less, his aid was indispensable.

These were a very considerable part of the lot bought up by Mr. Lucas and it is quite plain that there was harmonious

and concerted action, and that the purpose was to get a large amount of these claims at a heavy discount into such a condition that they might be made useful as against the complainants.   Mr. Lucas says he bought them with his own money; that in doing so he was not acting under any agreement with Mr. Green, whose attorney he is, and for whom he takes such course usually as he considers best, and that he does not care to state what is his possible expectation about it; and while the charge was that he was acting for Mr. Green in buying these claims, he went no further in the statement of his purpose.   The impression to be drawn from reading all this evidence is, that there was an active co-operation on the part of Woods to aid in making such liens as would dispose of a part of the property in violation of Sec. 22, and in violation of the spirit, if not the letter, of the injunction.   This co-operation went to all the claims in the hands of Mr. Lucas acquired at a discount, and as to those which exceeded the jurisdiction of a justice the point is clear.

Since the purpose included all the claims held by Mr. Lucas, it would seem that a court of equity would regard the whole mass as affected alike and that it would not stop to select those where the aid was active and not merely passive.   Lucas, Green and Woods were evidently acting in concert, the main object being to benefit Green.   Two of these were parties to the suit and had been served with the process of injunction; the other was their attorney and chargeable with knowledge of the writ.   The direct effect and object of the steps taken in these proceedings was to thwart the purpose and scope of the injunction.   When the order was made appointing a receiver the court had not been advised of these proceedings and it would seem to have been a part of the plan to keep the matter secret.

The court might well hold, therefore, that these acts were in substantial disobedience of the injunction; that they were done collusively, and for these reasons, no less than for the further reason that they were in violation of Sec. 22, Chap. 84, might hold the judgments all void as against the complainants.   In so doing there was no error.   The fact that in the order

appointing a receiver it had been provided that all liens should be preserved, made no difference. That meant simply that the mere appointment of a receiver should prejudice no one who had a right to claim a lien, and such, no doubt, would have been the case had no such clause appeared in the order. In any event, however, it was competent for the court, at the entry of the final order, to modify or change in form or substance any previous order made in the case. Hughs v. Washington, 65 Ill. 245.

It is urged the court erred in taxing the fee of complainants' solicitor at $500, and ordering the creditors whose claims had been purchased by Mr. Lucas to contribute *pro rata* with the complainants in paying the same. The decree finds that those creditors " would have received nothing on their claims but for the proceeding of which they receive like benefit with the complainants," and for this reason they are required to contribute. The assumption they would have received nothing but for the proceeding may or may not be well founded. It is to be presumed, however, that had they not been transferred suitable steps would have been taken, either in harmony with complainants or otherwise, to secure their just share of the proceeds, and whether this be so or not they were free to act as they saw fit and to employ such legal aid as they might prefer. They were not bound to fall in with complainants nor were they bound to rely upon the same counsel, and if they chose to employ other counsel it seems unreasonable to compel them also to pay a part of the fees of counsel for the complainants. It has never been the policy in this State to impose such a burden upon litigants contending for priority in a common fund. Even in partition cases where the defendant who employed no counsel and received as much benefit in proportion for the services of complainant's counsel as did complainant, it was held that the fee could not be taxed on the defendants. Constant v. Matteson, 22 Ill. 560; Strawn v. Strawn, 46 Ill. 412; Eimer v. Eimer, 47 Ill. 374.

The statute, in reference to partitions, was amended, allowing the court to apportion among the parties a reasonable solicitors' fee, so that each party should pay his equitable portion

thereof, and it has been held that the provision was not mandatory and that it was not applicable except in cases where the proceedings were amicable. In those cases where the parties defendant deemed it necessary to employ counsel to protect their interest, it was held they were not bound to contribute to the fee of adverse counsel. Kilgour v. Crawford, 51 Ill. 249; Stenger v. Edwards, 70 Ill. 631.

Whatever may be the rule in other jurisdictions, we think the settled practice in this State has been opposed to such allowances, and considering the liability to abuse and unfairness, it is, we are satisfied, the safer and better practice.

In this case the parties were contending for priorities. The assets of the concern were much less than the liabilities and creditors were not all required to join in with the suit of complainants at the peril of paying double counsel fees if they did not.

It is not unusual that parties who are seeking only a *pro rata* of a fund prefer to be represented by their own counsel, and they have this right. It is inequitable to compel them to bear part of the fee of counsel whose services they did not employ, and whose aid and fidelity they could not require or depend upon. We are of opinion the court erred in this part of the decree. And this will dispose of the cross-error, which is based upon the theory that the allowance should have been made at the expense *pro rata* of all the defendants.

It is next urged by appellants that the court erred in taxing the master's fee for taking testimony, making report, etc. It appears that a special master was appointed on the 24th of December, 1887, to take proofs and report his conclusions of fact and law to the court, and on the 16th of April, 1888, an order was entered that by agreement of parties by their solicitors, the fee of the special master was fixed at $225, the agreement being that the court might fix a reasonable fee, and in the final decree, there was an allowance of $25 more for preparing the decree, in addition to the former allowance. This allowance being in excess of the statute, is of course not to be sustained unless it is within the agreement of the par-

ties. From the record it appears that the special master was appointed to take testimony and report his conclusions of law and fact, and that by agreement the court was to fix a reasonable fee, which was done upon evidence as above stated, at $225. We do not care to review this evidence and are not disposed to hold that on the proof the fee is unreasonably high, though it is beyond all dispute high enough. The parties having made the agreement they did should not be very critical as to the amount allowed. It is not clear, however, that there was any authority to allow the fee of $25 for preparing the decree, and as this is made a distinct ground of complaint, we must examine it. This particular service is not within the terms of the order appointing the special master, nor is it a statutory service, nor do we find any proof as to its value upon the theory that it is within the purview of the order of appointment, and therefore we are constrained to hold that it was error to make the allowance.

No other points are presented by the brief of the appellants.

Five cross-errors are assigned by the appellees. The fourth relating to the taxing of counsel fees, has been disposed of. The first, second and third are as to the action of the court in allowing the claims of the defendants to share *pro rata* in the fund.

It seems to be the view of counsel that because the parties holding the judgments by confession sought to secure a preference contrary to the form of the statute and failed, that they should be postponed to the complainants, and that the claims which were purchased by Mr. Lucas should be regarded, not at their face, but at the price paid by him. Neither position seems tenable.

The fund in question is in the nature of a trust fund for the benefit of partnership creditors, and is to be distributed according to the rules and maxims of chancery—one of which maxims is that equality is equity. It is not perceived why one who has sought to establish a priority should, in the event of failure, lose his right of equality; nor is it apparent why one who is not liable to pay a debt may not purchase it and hold it at its face.

Green v. Hood, Bonbright & Co.

It appears from the evidence that these claims are the property of Mr. Lucas. It is charged, but not proved, that he holds them for the benefit of Green, and while, as already stated, there is some reason to believe that Green may ultimately get the claims, this is not so apparent as to justify the action proposed even if Green were a general partner, and as such, liable to pay the claims in the event the partnership assets are deficient. As a special partner he will, of course, be interested in making the debts of the concern as small as possible, the more so because he is a large creditor. Were it proved with such certainty as is necessary in legal proceedings, that Green is really the owner of those claims, a different question would be presented.

The fifth error assigned is that the court should have required the bank to look to Green before taking a *pro rata* share of the partnership assets. We have been referred to no authority for such a position, but counsel evidently place it upon some ground analogous to the doctrine of marshaling assets or securities. That doctrine is to promote equity and fair dealing among creditors, but the proposed application of it seems neither practical nor fair. Green is surety on the notes held by the bank, and if required by the bank to pay them, he would, as surety, be subrogated to the bank's lien or right, whatever it is, as against the assets of the partnership. This cross-error must be overruled.

We find no errors in the record save the allowance of the solicitors' fee of the complainants to be taxed against a portion of the defendants, and the allowance of the fee of $25 to the special master for preparing the final decree. As to these two items the decree will be reversed, and as to all else it will be affirmed. As to the costs of this appeal, the appellants will be required to pay three-fourths, and the appellees one-fourth.

*Decree modified and costs apportioned.*