J. E. WAGGONER, Plaintiff in Error, *vs.* ANNA M. SAETHER *et al.* Defendants in Error.

*Opinion filed February 17, 1915.*

1. PRACTICE—*motions and orders in a chancery proceeding are part of the record proper.* The motions and orders made in the course of a chancery proceeding are a part of the record proper, and are as much out of place in the certificate of evidence as the pleadings and rulings thereon would be in a bill of exceptions in an action at law.

2. SAME—*function of a certificate of evidence.* The function of a certificate of evidence is to preserve and set forth the evidence offered, received and considered or rejected by the chancellor on the hearing, and its only object is to preserve matters which are not a part of the record proper.

3. SAME—*oral announcements or remarks by the chancellor do not constitute the decree.* Oral announcements or remarks by the chancellor expressing his opinion on the question at issue do not constitute the decree, and they are of no binding force or effect unless they are embodied in the decree and filed with the clerk, to be entered of record.

4. SPECIFIC PERFORMANCE—*when court may order conveyance from holder of legal title to equitable owner's assignee.* One who has a valid, existing contract with the owners of the legal title to convey lands to him is the equitable owner and may assign his contract or execute a new contract for the sale of the land to a third party, and if the latter performs her part of the contract, a court of equity, upon a bill by her for specific performance, to which the holders of the legal title are made parties and under which they are brought into court, may decree a conveyance from the holders of the legal title directly to the complainant.

5. CONTRACTS—*when contract is for the sale of land.* A contract made between the equitable owner of land and a third party, by which the former agrees to sell and the latter agrees to buy certain described real estate for a specified consideration and upon specified terms, is a contract for the sale of land which may be specifically enforced, notwithstanding a provision for the furnishing of articles of agreement for a warranty deed in the event the proposed purchaser elects to pay the balance of the purchase price in deferred payments of monthly installments of $25 or more, as the purchaser may waive such provision and elect to pay the balance in full and demand a deed.

6. APPEALS AND ERRORS—*when question is not open to review.* A question raised in the argument is not open to review in the Supreme Court where there is no assignment of error which presents such question.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. J. M. O'CONNOR, Judge, presiding.

Plaintiff in error, J. E. Waggoner, filed his bill of complaint in the superior court of Cook county against Anna M. Saether (who will be referred to in the opinion as defendant in error) and E. A. Sporron, asking the court to construe two contracts between plaintiff in error and defendant in error and declare the same null and void and order them surrendered up and canceled as clouds on the title of the property of plaintiff in error, copies of the contracts being attached to the bill. Defendant in error and Sporron answered the original bill. Defendant in error also filed a cross-bill asking for specific performance of the contracts, in which she alleged plaintiff in error had purchased one of the tracts under a contract of sale from Clif-

267 − 3

ton L. Field and the other tract under a contract of sale
from Robert A. Scholz and Ross H. Welch. Plaintiff in
error, Alonzo H. Hill, Field, Scholz, Welch and Sporron
were all made defendants to the cross-bill. Scholz, Welch
and Sporron answered the cross-bill, Hill filed a disclaimer,
Field defaulted, and plaintiff in error interposed a general
and special demurrer. The court overruled the demurrer,
and plaintiff in error electing to abide by his demurrer, the
cross-bill was taken as confessed as to him and the cause
proceeded to a hearing on the answer of the other defend-
ants and the disclaimer of Hill. A decree was entered in
favor of the defendant in error for specific performance of
her contracts with plaintiff in error, and allowed Sporron
$260 from the amount due plaintiff in error on his con-
tracts, as commission for making the sale of the lands in
question. Plaintiff in error sued out a writ of error to re-
view this decree. Hill also assigned cross-errors on the
record in this court.

The record filed in this court contains no copy of the
original bill and answers thereto or certificate of evidence
containing the evidence introduced on the hearing, but it
appears from such of the pleadings as are in the record
and the decree that on October 7, 1912, plaintiff in error
entered into two written contracts with defendant in error
for the sale to her of certain property in the city of Chi-
cago, the contracts being in all material respects identical
except as to the description of the property and the consid-
eration to be paid therefor. The property described in the
first contract was a lot 52 by 125 feet, at the north-west
corner of Lawrence and North Hamlin avenues, for which
defendant in error was to pay $2300. The other property
was a lot 57.25 by 125 feet, at the north-west corner of
Lawrence and North Ridgeway avenues, for which she was
to pay $2900. The material parts of each contract in ques-
tion are as follows:

"This memorandum witnesseth, that J. E. Waggoner hereby agrees to sell, and A. M. Saether agrees to purchase, at the price of [in one case $2300 and in the other $2900] the following described real estate, situated in Cook county, Illinois, [describing the property,] subject to all taxes and assessments levied after the year 1912. Said purchaser has paid $100 as earnest money, to be applied on said purchase when consummated, and agrees to pay within thirty days after date hereof, after the title has been examined and found good, the further sum of [in the one case $1000.35 and in the other $1195.49] at the office of E. A. Sporron, Chicago, provided a good and sufficient articles of agreement for warranty deed signed by the owner of the premises and in satisfactory form (subject as aforesaid) shall then be ready for delivery. The balance [in the one case of $1199.65 and in the other of $1604.51] payable in monthly installments of $25 or more, and interest at six per cent, becoming due, respectively, on or before the first day of each and every month herefrom until full payment is made as provided by existing monthly payment contracts held by seller and to which reference is hereby made. Seller agrees to furnish abstract of title or title guaranty policy for the purpose of examination within fifteen days from the date hereof, showing good and sufficient title in the seller named in said articles of agreement. Should the title to the property not prove good then this $100 to be refunded, but should the said purchaser herein mentioned fail to perform this contract on her part promptly at the time and in the manner above specified, time being the essence of this contract, then the above $100 shall be forfeited by her as liquidated damages and the above contract shall be and become null and void. This contract and the said earnest money shall be held by E. A. Sporron, Chicago, for the mutual benefit of the parties hereto.

"In testimony whereof said parties hereto set their hands this 7th day of October, A. D. 1912."

The cross-bill charges the defendant in error has at all times been ready and willing, and now is ready and willing, to perform the terms of the agreement and make the payments therein provided, and that she has elected to pay the whole amount of the consideration in said contracts specified, in cash; that plaintiff in error has failed and refused to perform his agreement and furnish a guaranty policy or abstract of title showing a good and sufficient title to the premises and articles of agreement for a warranty deed from the owners, or a warranty deed signed by the owners

conveying to her the said premises; that at the time of the signing of the contract plaintiff in error was not, and never had been, the owner of the premises, his only interest in the same being by virtue of contracts between himself and Alonzo H. Hill, by which the latter agreed to sell and the plaintiff in error agreed to purchase the said premises, the lot at Lawrence and North Ridgeway avenues, for $2034; that the only interest Hill had in the Lawrence and North Hamlin avenue property was by virtue of a contract for a warranty deed from Clifton L. Field, in whom the title stood of record, and in the Lawrence and North Ridgeway avenue property by virtue of a similar contract with Robert A. Scholz and Ross H. Welch, in whom the title stood of record; that at the time of making the contract in question all of the foregoing contracts between Waggoner and Hill, and between Hill and Field, and between Hill and Scholz and Welch, were in full force and effect. By an amendment to the cross-bill it was alleged that Field had performed his contract by conveying the property owned by him to Hill pursuant to his contract with Hill.

The prayer of the cross-bill is that the court ascertain the amount due the several parties on their respective contracts, and upon defendant in error paying the amount due on her contract, and the payment to Hill, Scholz and Welch of the amounts due on their respective contracts, that the court decree a conveyance of the premises to her in accordance with the terms of her contracts with plaintiff in error, etc.

The court by its decree found the facts substantially as set forth in the cross-bill, and in addition, that Sporron was employed by plaintiff in error as agent and broker in procuring the sale of the property to defendant in error; that his services in such matter were reasonably worth $260, which amount it decreed should be paid him out of the money due the plaintiff in error; that the defendant in error pay the master in chancery $2200, with interest on the

deferred payments of $1199.65 at six per cent from October 7, 1912,—the amount due from her on the Lawrence and North Hamlin avenue property,—and that Alonzo H. Hill convey the property to her on payment of the balance due on his contract, which was found to be $1135.16, with interest at six per cent; that she pay to the master· in chancery $2800, with interest on the deferred payments of $1604.51 at six per cent from October 7, 1912, being the amount due from her on the Lawrence and North Ridgeway avenue property; that upon the payment to Scholz and Welch of $1188.50, with interest, being the amount due them under their contract with Hill, they convey the property to defendant in error; that after paying the above amounts, taxes, interest and costs the master report the balance in his hands for distribution, and that the court retain jurisdiction of the cause for the purpose of determining the distribution to be made of the balance remaining in the master's hands.

It further appears· from a certificate of evidence taken on May 14, 1914, at the May term of the court, that on January 19, 1914, arguments were heard on the demurrer to the cross-bill, at the conclusion of which the court announced the demurrer would be overruled; that counsel for plaintiff in error stated he would abide by his demurrer, and thereafter a draft of a decree was prepared and submitted to the court reciting the foregoing facts. From another certificate of evidence taken on May 27, 1914, it appears that on that day plaintiff in error made a motion for the third time to enter a decree reciting the overruling of the demurrer on January 19, 1914, the election of plaintiff in error to abide by his demurrer and the taking of the cross-bill as confessed as to him, which motion the court overruled.

It is admitted that the draft of the decree contained in the purported certificate of evidence is incomplete and was never signed by the judge or filed with the clerk to be en-

tered of record in the cause. The record of the court as made up by the clerk shows only the following order entered on January 19, 1914: "On motion of solicitor for complainant the demurrer of E. A. Sporron is hereby overruled and the defendant is given ten days to answer." No mention whatever is made of a hearing on the demurrer to the cross-bill.

On March 19, 1914, defendant in error obtained leave to amend her cross-bill, and an order was entered "that the demurrer of the cross-defendant, Waggoner, stand as his demurrer to the cross-bill as amended." On May 18, 1914, defendant in error again obtained leave to amend her cross-bill, which was amended instanter, and a rule was entered on plaintiff in error to plead, answer or demur by May 20, and it was ordered that the answers of Scholz, Welch and Sporron, and the disclaimer of Hill, stand as their answers and disclaimer, respectively, to the cross-bill as amended. It further appears from a subsequent order entered on the same day that the court overruled the demurrer of plaintiff in error to the cross-bill, and that plaintiff in error, by his counsel, "in open court elects to stand upon his said demurrer, and it is ordered that default of said J. E. Waggoner be entered as to said cross-bill *pro confesso,* and that the same be entered *nunc pro tunc* as of May 13, 1914," and that the final decree be presented at ten o'clock on May 21, 1914. The final decree entered recites the hearing on the demurrer; the election of plaintiff in error to stand by his demurrer; the order entered taking the cross-bill as confessed as to plaintiff in error, and the coming on of the cause to be heard on the disclaimer of Hill and the answers of the other defendants to the cross-bill; the taking of evidence in open court before the chancellor, together with a very full finding of the facts as established on such hearing, and the prayer for and the allowance of appeal to the plaintiff in error upon his filing an appeal bond in the penal sum of $1000.

Plaintiff in error insists (1) that it was error for the court to allow the cross-bill to be amended subsequent to January 19, 1914, for the reason that the certificate of evidence in the record shows a hearing on the demurrer on that date and that the cross-bill was taken as confessed as to plaintiff in error, and in not entering a decree as of that date overruling the demurrer and taking the cross-bill as confessed as to plaintiff in error; (2) that the court erred in decreeing specific performance of the contracts and a conveyance of the property to defendant in error, for the reason the contracts between her and plaintiff in error were not contracts for the conveyance of real estate, but, on the contrary, only contracts to procure the execution of articles of agreement for the conveyance of real estate, and therefore not enforcible as contracts for the conveyance of real estate; (3) that the court exceeded its jurisdiction in requiring the parties from whom plaintiff in error held contracts for the conveyance of the property, to convey the same to defendant in error; and (4) that the court erred in decreeing the payment of $260 to Sporron for his services in procuring defendant in error to purchase the property, this latter contention, however, not being assigned as error on the record in this court.

MILFORD J. THOMPSON, for plaintiff in error.

BRADLEY, HARPER & EHEIM, (THOMAS E. D. BRADLEY, of counsel,) for defendant in error Anna M. Saether.

HUBERT D. CROCKER, (GEORGE J. GILBERT, of counsel,) for defendant in error Alonzo H. Hill.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The argument of plaintiff in error with respect to the contention that the court overruled the demurrer on January 19, 1914, and entered a decree *pro confesso* against the

plaintiff in error, is based upon a misconception of the office and function of a certificate of evidence and the matters which may properly be preserved and shown by the same in a chancery case. The pleadings, motions, orders and the ruling of the chancellor thereon in a chancery case, which are a part of the record proper, have no place in the certificate of evidence and cannot be shown in that way. The function of a certificate of evidence, as its name implies, is to preserve and set forth the evidence offered, received and considered or rejected by the chancellor on the hearing. Its sole function and only object is to preserve such matters as are not a part of the record proper and which otherwise would not become a part of the record. The motions and orders made in the course of the proceedings, and the rulings of the chancellor thereon, are a part of the record proper, and hence as inoperative and as much out of place in a certificate of evidence in a chancery case as a statement of the pleadings and the rulings of the court thereon would be in a bill of exceptions in an action at law. The reason for this, as stated in *Flaherty* v. *McCormick,* 123 Ill. 525, is, that "all oral motions in a chancery cause should be, and are supposed to be, noted upon the clerk's docket and a minute thereof made by the judge himself, and the motions, together with the orders made thereon, should be duly entered of record by the clerk in making up his orders in the case. By this means they become a matter of record without the aid of a judge's certificate or bill of exceptions, as is required in a case at law. So where a motion is reduced to writing and filed in the cause it is then as much a part of the record as anything else in it, and the setting it forth, therefore, in such a certificate would add nothing to its force or validity."

Neither does the oral announcement or remarks of the chancellor expressing his opinion on the question at issue constitute the decree of the court, and they are of no binding force unless embodied in the decree and filed with the

clerk, to be entered in the records of the court. (5 Ency. of Pl. & Pr. 1046; *Hughs* v. *Washington,* 65 Ill. 245; *Paltzer* v. *Johnston,* 213 id. 338; *Fraher* v. *Brazelton,* 12 Lea, 278.) As said by this court in *Hughs* v. *Washington, supra:* "The mere oral announcement of the chancellor of his decision and the grounds upon which it is based, or the reducing them to writing, is no more than the minutes taken in the English practice. The whole matter is completely under the control of the chancellor until the final decree has been filed or recorded. Until that time he may alter, amend, change, or even disregard, all that he had said in his minutes. * * * There was, then, no decree of the court until it was approved and filed for record or was recorded." And in *Fraher* v. *Brazelton, supra,* the court said: "While in this case the chancellor had announced the decree, still none had been entered and signed. It was still in the breast of the court, and there was nothing of binding force, in any sense, upon the chancellor or the parties." Precisely the same thing is true in the case at bar. While the chancellor may have announced what his ruling would be on the demurrer to the cross-bill, no order to that effect was made. The only order the record shows was the one with reference to the demurrer of Sporron to the original bill, which was overruled on the motion of plaintiff in error and a rule entered upon Sporron to answer the same within ten days. The record, as exhibited to us by the transcript, imports verity. (*Wolf* v. *Hope,* 210 Ill. 50.) The transcript filed in this court not only shows no hearing had on the demurrer on January 19, 1914, but a hearing on the same at a much later date, at which time the demurrer was overruled and a decree *pro confesso* entered against plaintiff in error.

We find nothing in the record proper to indicate a hearing was had on the demurrer to the cross-bill on January 19, 1914, and a decree *pro confesso* entered on that date, or that the court permitted amendments to be made to the

cross-bill after it was taken as confessed as to plaintiff in error.

As to the other contentions made by plaintiff in error, the decree finds Field had conveyed the property described in his contract to Hill, who holds title to the same by an unrecorded deed, and that Hill, in turn, contracted to sell the same to plaintiff in error under a contract which authorizes him to pay the whole amount of the consideration at any time and have the property conveyed to him. Hill was made a party defendant to the cross-bill and filed a disclaimer, thereby disclaiming all interest in the subject matter of the suit. (Mitford & Tyler's Pl. & Pr. in Eq. 111, 202.) He is therefore not in a position to complain of the decree requiring a conveyance of the premises to defendant in error. Neither Scholz nor Welch raised any objections to performing their contract with Hill (who subsequently contracted to convey the property to plaintiff in error) nor to directly conveying the property to defendant in error, and plaintiff in error cannot be heard to raise objections to the decree which might be urged by them but which in no way injuriously affect his rights in the premises.

Plaintiff in error was the equitable owner of the property under an existing valid agreement with the owners of the legal title to convey the same to him, and the court therefore had jurisdiction to decree a conveyance directly to defendant in error. Such owners were joined as parties to the suit and submitted themselves to the jurisdiction of the court. (36 Cyc. 375; *Keys* v. *Test,* 33 Ill. 316; *Borders* v. *Murphy,* 78 id. 81; *Fleming* v. *Carter,* 87 id. 565.) "In contracts for the sale of land the doctrine in equity is, that from the time of contract the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor. In equity the vendor is treated as the owner of the money, and is deemed to stand seized of the land for the benefit of the purchaser." (*Fuller* v. *Brad-*

*ley,* 160 Ill. 51, and cases cited.)   Plaintiff in error, being
the equitable owner of the fee, could dispose of that inter-
est either by an assignment of his contract for a deed or
by the execution of a new contract in which he agreed to
convey the same.   In either event, so long as the equitable
title is in him, upon the performance of the contract by the
other party a court of chancery had jurisdiction to decree
specific performance of the contract on the part of plaintiff
in error or on the part of those holding the legal title for
his benefit.

Plaintiff in error argues that the contracts in question
are not contracts for the conveyance of real estate, but, on
the contrary, are only contracts to procure the execution
of articles of agreement for warranty deeds, and, therefore,
that they cannot be specifically enforced as contracts for
the conveyance of real estate, although the evidence shows
that at the time the contracts were made and the bill was
filed plaintiff in error was the equitable owner of the prop-
erty which he contracted to convey.   The language of the
contracts is not susceptible of such a strained and unnatu-
ral construction.   The contracts clearly were not so under-
stood by the parties.   In the first sentence each contract
provided that plaintiff in error agrees to sell and defendant
in error agrees to purchase at a fixed price certain real es-
tate therein described.   The language used is plain and un-
ambiguous, and we are unable to see how the agreement on
the part of the one party to sell and of the other party to
buy could have been set forth in more apt or appropriate
language.   That the contracts also contain provisions for
the furnishing of an abstract of title or a title guaranty
policy, together with articles of agreement for a warranty
deed in the event the defendant in error elected to pay
the balance of the purchase price in deferred payments in
installments of $25 or more per month, makes them none
the less contracts for the purchase and sale of real estate.
The agreement of purchase and sale is not negatived by

those provisions, although the time for the final consummation of the transaction may thereby be postponed for a time, at the election of the defendant in error. The provisions for the furnishing of an abstract of title or a title guaranty policy, and of a deed providing for the payment of the balance in installments of $25 or more per month, manifestly were inserted in the contracts for the benefit of the defendant in error, and were not intended to serve as a loophole through which the vendor could escape from a compliance with the contract, or to afford a means with which to swindle and defraud defendant in error out of the earnest money she had advanced in good faith in the purchase of the property. To give the contracts the effect contended for by plaintiff in error would be to assist in perpetrating a fraud, and if it was the intent of plaintiff in error to defraud defendant in error, she frustrated such design by offering to take the property and by producing the money and demanding a deed. In any event, the contract provided for a payment of $25 a month *or more,* so there was no limit to the amount defendant in error could pay, up to the entire balance due, at any time. She had the right to waive the provisions for monthly payments, guaranty of title and contracts for deeds and elect to pay the full amount of the consideration in cash and demand a deed of the property. Upon making such election and tendering the full amount of the purchase price she became entitled to a deed conveying the land to her. The decree finds she has made such election and has tendered full performance of the contract on her part. At this time the equitable title to the property was vested in plaintiff in error, and under the rule announced in the above authorities the court properly decreed a conveyance of the property in question directly to defendant in error.

It is also insisted in argument that the court erred in decreeing the payment of $260 to Sporron for his services in procuring the sale of the property to defendant in error.

It appears from the record that Sporron was made a party both to the original and cross-bills and was thus required to come into court and set up his rights in the premises. No certificate of evidence is contained in the record, and the finding of facts in the decree is sufficient to warrant the court in entering such a decree as would adjust and finally dispose of the rights of all parties before the court in the subject matter of the transaction. Nor is any error assigned on the record which in any way calls in question this part of the decree. The question, therefore, is not before this court and is not open for review. *Anglo-Wyoming Oil Fields* v. *Miller*, 216 Ill. 272; *Berry* v. *City of Chicago*, 192 id. 154; *Skakel* v. *People*, 188 id. 291; *Gibler* v. *City of Mattoon*, 167 id. 18.

For the reasons given, the judgment of the superior court of Cook county will be affirmed.

*Judgment affirmed.*