James J. McKeon, Appellee, v. Martha McKeon, Appellant.

Gen. No. 46,376.

First District, Second Division.

February 15, 1955.

Released for publication March 7, 1955.

Benjamin A. Rasky, of Chicago, for appellant.

Eugene R. Ward, of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal from an order entered in the superior court of Cook county denying a petition to vacate a decree which granted plaintiff a divorce and dismissed defendant's counterclaim for separate maintenance.

April 9, 1952 an unsworn complaint for divorce was filed by James J. McKeon against Martha McKeon alleging extreme and repeated cruelty. Summons was issued and an appearance was filed by defendant on May 5, 1952. The defendant filed an unsworn answer on May 12, 1952 denying all the allegations in the bill except the allegations as to residence, marriage and the birth of a child. On the same date the defendant filed a sworn counterclaim for separate maintenance, alleging that the parties lived and cohabited as husband and wife until on or about February 29, 1952, when the counterdefendant willfully deserted and absented himself from the counterplaintiff, and has persisted in such willful desertion until the present time; that she is now living separate and apart from the counterdefendant without fault on her part. The counterclaim also has allegations with reference to the employment of the counterdefendant and a prayer for alimony and support money for the minor child. It appears from the record that no reply or answer was filed to this counterclaim.

On May 28, 1952, on the petition of the defendant, an order was entered by the court allowing the defendant the sum of $70 a month for temporary support of the minor son of the parties, who was aged 16, and it was further ordered that a preliminary hearing be held on June 27, 1952. The preliminary hearing was continued

from time to time, and finally to September 10, 1952. No hearing was held. On September 10, 1952 the petitioner filed a petition for a rule to show cause against the plaintiff for failure to comply with the order of court with reference to payment of attorney's fees, and a rule was entered against the plaintiff, which rule was dismissed on motion of the defendant on September 30, 1952, the fees having been paid.

The record shows that on May 8, 1953, the cause coming on to be heard on the regular call, it was assigned to Judge Cotton. A hearing was had before Judge Cotton the same day. At the trial of the case the defendant and counterplaintiff did not appear, nor was she represented by counsel. Evidence was heard on the part of the plaintiff and counterdefendant, and on May 14th the court entered a decree for divorce.

The first paragraph of the decree reads as follows:

"This cause coming on to be heard on the regular contested divorce calendar upon the complaint of James J. McKeon, the Answer and Counterclaim of Martha McKeon and the Answer of Plaintiff thereto and the Court having considered the same and having heard the sworn testimony of witnesses, FINDS: . . ."

The decree also provides: "Defendant has failed to prosecute her counterclaim and said complaint should be dismissed." The custody of the minor child was awarded to the defendant and it was decreed that the plaintiff should pay the sum of $70 a month for support and maintenance. With the decree was filed a transcript of the evidence.

On August 18th, by leave of court, the defendant and counterplaintiff filed a sworn petition to vacate and set aside the decree of divorce and the order in the decree dismissing the counterclaim for separate maintenance, in which petition the defendant alleges that neither the defendant and counterplaintiff nor her at-

518

torney had any knowledge of the entry of the decree of the court until August 7, 1953; that no notice of the presentation of the decree and transcript of evidence on May 14, 1953 was given to the defendant or her attorney; that the recitation of the decree of divorce that the case was heard on the plaintiff's complaint, answer and counterclaim by the defendant, and the answer thereto by the plaintiff, was not true inasmuch as no answer had been filed by the plaintiff to the defendant's counterclaim; and that the case, therefore, was not at issue at the time heard for trial. The petition further alleges that the parties had lived together as husband and wife until February 29, 1952, when the plaintiff told the defendant that he had fallen in love with another woman and wanted a divorce; that on the date when the case first came on the contested divorce calendar April 23, 1953 the attorney for the defendant and counterplaintiff was at home attending to his sick mother; that the case was thereupon continued to May 8, 1953 without any order appearing in the docket or the case file; that no notice was given to the defendant or her attorney of such continuance; and that the evidence of the plaintiff and his witnesses with reference to the acts of cruelty was false and was not sufficient to sustain the decree for divorce.

On September 24, 1953 the plaintiff and counterdefendant filed, by order of court, a sworn answer to the petition, in which he alleged that the case appeared on the trial call of the contested divorce cases in its regular position in the assignment court on April 23, 1953 and was set for trial May 8, 1953, on which day it was assigned to Judge Cotton as a contested case; that he admits no notice of the presentment of the decree was given; that he denies the allegations that no answer to the counterclaim was filed, but alleges that an answer was filed by him "in the office of the Clerk and a carbon copy of same produced at the hearing." He further alleges that prior to April 23, 1953 notice was

given in the Chicago Daily Law Bulletin that the case would be called on April 23, 1953; that on April 23rd the case was called and set for May 8, 1953; that the Law Bulletin on April 23rd carried a memorandum that the case was set for May 8, 1953, and on May 7th listed the case as : being on the call for trial at 10:00 a. m. the following day. He denied all the other allegations in the petition, and says that the defendant was guilty of negligence in not protecting her interests and cannot now be heard to complain as she had her day in court; that the plaintiff has since remarried and his rights and the rights of an innocent third party would be greatly prejudiced.

The court heard the petition and answer on the merits. Evidence was introduced. The court entered an order denying the petition of the defendant and counterplaintiff to vacate the decree for divorce and order dismissing her counterclaim, to the entry of which order an exception was taken.

The trial court filed a memorandum opinion with its order, in which it states:

"As to the procedural aspects of the case, it is alleged that the plaintiff had failed to file an answer to the counterclaim of the Defendant. However, this matter, having been adjudicated in the decree, it is presumed that the Court had all evidence before it to sustain its finding in that respect. Furthermore, to say that the answer to the counterclaim was not in the file some time after the decree was entered, is not of any evidentiary value that it was not in the file at the time of the trial or hearing. Indeed, it may be said further that the fact that it was not in the file at a later date, if such was the case, is not even persuasive that it was not in the file at the date of the trial."

The court found that the case was handled in the usual, regular and customary manner. In the memorandum opinion it is further stated:

520

"It is furthermore argued by petitioner that some sort of notice should have been given to the defendant. Such is not the procedure under the facts and circumstances of this case. If the pleadings were settled, it was then a matter of the trial court . . . to assign out these cases for trial as they were reached."

It was the court's opinion that it was the duty, obligation and responsibility of the defendant to follow the trial calendar as published in the Chicago Daily Law Bulletin and that defendant's failure has not been explained to the satisfaction of the court. The court was further of the opinion that perjury was not committed in the trial of the case and that, the petition having been filed more than 90 days after the decree was entered and the status of the parties having been changed, there were no facts presented which would justify the vacation of the decree.

■■ Section 32 of the Civil Practice Act (Ill. Rev. Stats. 1953, ch. 110, par. 156 [Jones Ill. Stats. Ann. 104.032]) provides: ". . . When new matter by way of defense or counterclaim is pleaded in the answer, a reply shall be filed by the plaintiff. . . ." From the record it appears that no answer had been filed to the counterclaim of the defendant. The decree cannot contradict the record. In re Stewart's Estate, 110 Ore. 408, 223 Pac. 727. When the case was called for trial and tried, it was not at issue. The action of the court in proceeding with the case under those circumstances was error. Neither the defendant and counterplaintiff nor her attorney appeared at the hearing of the case. In Blake v. Miller, 118 Ill. 500, the court says:

"The record did not show that any replication had been filed to the special plea. The issues were not made up. As neither Blake nor his attorney was present at the trial, there was no waiver of the objection that there was no replication. It follows, that the trial was

521

irregular, and the judgment was erroneous. (Strohm v. Hayes, 70 Ill. 41.)"

See also Stare v. Vayda, 234 Ill. App. 309; Moreland v. Bebber, 102 Ill. App. 572; Salomon v. McCormick, 95 Ill. App. 332.

█ In this case the plaintiff in his complaint alleges "that he lived with defendant until on or about October 7, 1951, although for several years previously he had not been living with her as husband and wife." On the hearing the plaintiff stated that he was not living with the defendant at that time and that they had separated on October 7, 1951, but nowhere in the complaint or in the evidence does he allege or testify that they had lived separate and apart from that date. The defendant, on the other hand, in her sworn counterclaim alleges that they had lived together and cohabited as husband and wife until about February 29, 1952. Since no answer was filed to the counterclaim that fact was admitted. Watt v. Cecil, 368 Ill. 510; Hummel v. Cardwell, 323 Ill. App. 440.

█ Whether there is a contested hearing with both parties present or an ex parte hearing, the entry of a decree for divorce should not be treated as a casual matter. In Ollman v. Ollman, 396 Ill. 176, the court says:

". . . An action for divorce involves interests other than those of the parties litigant. The State, as the sovereign, has an interest in maintaining the integrity and permanency of the marriage relation. (Floberg v. Floberg, 358 Ill. 626.) A decree of divorce vitally concerns the minor children, if any, of the divorced couple, and affects, in a general way, the home life and domestic relations of the people, the public morals, the prevailing system of social order, and in a greater or lesser degree, the welfare of every citizen. These interests are not represented by either of the parties to a divorce proceeding, but the law has not left them unprotected.

It is within the power of the chancellor of whom a decree of divorce is asked to stand as a representative of the public, and, in a proper case, to refuse to grant the decree, though the grounds of such refusal be without the issues made by the pleadings of the parties. (Decker v. Decker, 193 Ill. 285.) In all divorce suits the public occupies the position of a third party. It does not plead, but is represented by the conscience of the court. . . .

". . . It is a doctrine of general acceptance that the State, whose duty it is to guard the marriage relation, is a party to every divorce suit, and that the interests of the State in such suit are in the keeping and under the protection of the court. Hence, whenever in the course of the trial, it appears that the action is collusive or barred, it is the duty of the court, regardless of the pleadings, fully to inquire, of its own motion, as the representative of the State, into the facts and circumstances and to act in accordance with the facts thus developed."

Here, from an inspection of the record, the court could have easily determined that the defendant had been represented by counsel and had been active in the defense of the case, and that there was no answer filed to the counterclaim of the defendant. This was its duty. In Winning v. Winning, 366 Ill. 57, the court says:

"The State has always been an interested third party in all divorce actions under the public policy of this State and we have consistently held to a rigid enforcement of the provisions of the Divorce act. . . . [Citing cases.] Under the facts appearing in this record showing (a) the earnest contest by the defendant at all stages of the proceeding of the right of the plaintiff to his divorce, and (b) a recent decree entered by the circuit court finding appellee not entitled to a divorce, we believe it was the duty of the trial court,

under the circumstances, to have satisfied himself that the defendant had prior notice of the hearing of April 18 before entering a default against her. . . . This was a proper case for the application of that part of section 8 of the Divorce act providing that the judge, if satisfied the interests of the defendant require it, shall direct additional notice given the defendant of the time and place when and where the cause will be heard."

Rule 21 of the superior court of Cook county is as follows:

"Sec. 1. No motion will be heard or order made in any cause without notice to the opposite party after such party has entered his appearance, except when a case is reached on the trial call and called for trial."

In this State in equity it is the practice for the attorney who obtains the decree to prepare it and submit it to the judge for approval and entry. The judge's oral announcement of his decision and the reasons therefor have no effect, and the decree is not the act of the court until it is signed or approved and entered of record. This is a judicial act. Horn v. Horn, 234 Ill. 268; Waggoner v. Saether, 267 Ill. 32; Moore v. Shook, 276 Ill. 47. Sometimes a considerable amount of time elapses between the conclusion of the trial and the entry of the decree. Rule 21 of the superior court of Cook county has never been held to dispense with the necessity of notice when the court, after the conclusion of the trial, is asked to perform a judicial act therein. Motions for a new trial within the statutory period are always predicated on notice. In equity cases it has been the common practice, where an appearance and answer are on file and an ex parte hearing has been held, to require that notice be served upon the opposing party of the approval and entry of the decree or that the opposing party indicate on the decree his approval. This practice is in the furtherance of justice,

particularly when we consider the vast number of cases passing before the courts of Cook county. Rule 21 of the superior court of Cook county could and should be interpreted to make such requirement mandatory. In this case the decree was not submitted to the defendant, nor was notice given to her of its presentation to the judge for approval and entry.

██ We are not reviewing the sufficiency of the evidence in this case; however, we believe we should call attention to the evidence upon which the decree was granted. As it appears from the record, the testimony of the plaintiff in support of his charge of extreme and repeated cruelty, is as follows:

"Q. Was she ever cruel to you? A. Well it seems like since '48 we could never possibly get along. It was always fighting. Q. Now calling your attention to December 27, 1950 . . . did you have an argument that day? A. I had an argument and I was going to go out and I turned around and she scratched me. Q. Did she hit you? A. Yes, she did, like she wanted to push me. Q. Did she hit you about the face? A. Yes. Q. Did you give her any reason to do that? A. No, it was the same thing all the time. . . . Q. Now, what if anything unusual happened on October 7, 1951? A. We had an argument and she threw dishes and everything at me. Q. Did she hit you? A. She was trying to hit me. Q. Did she hit you on that day? A. Yes, she did and I looked terrible going out. Q. Did she leave any marks on you? A. Just scratches on my face."

This conduct was held to be extreme and repeated cruelty. Our courts have not so held. Levy v. Levy, 388 Ill. 179; Amberson v. Amberson, 349 Ill. 249; Aurand v. Aurand, 157 Ill. 321; Garrett v. Garrett, 252 Ill. 318.

██ The trial court erred in denying the petition of the defendant and counterplaintiff to vacate the

decree granting a divorce to the plaintiff and dismissing the counterclaim of the defendant. The plaintiff and counterdefendant should have been given leave to answer the counterclaim and the case again placed on the contested divorce calendar. The order of the trial court denying the petition of the defendant is reversed, and the cause is remanded with directions to proceed in conformity with the views herein expressed.

Order reversed and cause remanded with directions.

ROBSON and SCHWARTZ, JJ., concur.