*In re* MARRIAGE OF MARY J. DWAN, Petitioner-Appellee, and FRANCIS A. DWAN, Respondent-Appellant.

First District (2nd Division)   No. 81—2322

Opinion filed  August 24, 1982.

Brown, Cook & Hanson, of Chicago, for appellant.

Rinella and Rinella, Ltd., of Chicago, for appellee.

JUSTICE PERLIN delivered the opinion of the court:

On August 20, 1981, the marriage of Francis and Mary Dwan (Frank and Mary respectively) was dissolved and the marital property was apportioned. Frank appeals, contending that: (1) the trial court's award to Mary of $2,500 per month in unallocated maintenance and child support was excessive, contrary to the evidence and an abuse of discretion; (2) the trial court's finding and order awarding Mary $56,000 in alleged support and maintenance arrearages was contrary to the evidence; (3) the trial court abused its discretion in ordering Frank to pay an excessive amount of attorneys fees—$12,896.90—to Mary's attorneys; and (4) the trial court erred in entering a judgment prepared by Mary's counsel which contained orders on issues not presented to the trial court.

For the reasons which follow, we affirm.

Mary and Frank were married on April 12, 1958. Their marriage

produced five children, two of whom were minors at the time of dissolution: Martin, aged 17, and Colleen, aged 14. The parties stipulated that Mary should have custody of the minor children. Mary, the minor children and a third child, Guy Francis, aged 18, resided in a house which Frank had conveyed to Mary in 1977. The house, therefore, was owned by Mary at the time of dissolution and was not apportioned as marital property.

Mary first filed for divorce on October 12, 1972, and the parties separated at that time. The couple attempted to reconcile on numerous occasions, but all such attempts were futile and the matter proceeded to trial on March 10, 1981.

Mary, aged 44, had a high school diploma and one year of additional schooling in a training program for medical secretaries. She was employed as a hostess in a restaurant. Her gross income was $250 per week, her net income was $200 per week. She claimed monthly expenses of $4,400 and one outstanding debt of $36,000 which she had borrowed from a family friend to support her family during the course of her separation from Frank.

Frank, aged 48, is a board eligible orthopedic surgeon with a subspecialty in spinal surgery. According to his tax returns, Frank practiced medicine in Ottawa, Illinois, during 1973, 1974 and 1975, deriving gross incomes of $40,000, $115,000 and $150,000 respectively. His adjusted gross incomes for these years were $21,000, $76,068 and $106,731 respectively.

For the first three months of 1976 Frank was hospitalized for a drug abuse problem at MacNeal Hospital in Cicero, Illinois. In the latter part of that year he moved to Jacksonhole, Wyoming, where he became a staff physician for a ski resort. Shortly thereafter Frank broke his hip in a skiing accident. He worked intermittently until July 1978, when he enrolled in a training course in spinal surgery at New York Orthopedic Hospital. According to his tax returns, his taxable incomes for 1976, 1977 and 1978 were $34,724, $4,550 and $14,263 respectively. The record does not reflect his gross incomes for these years.

Upon completion of his training course in spinal surgery, in July 1979, Frank opened a practice in Sydney, Montana. In 1980, his gross receipts were approximately $150,000 and his adjusted gross income, as reflected on a "draft" of his 1980 tax return, was $36,401. In 1981, his gross receipts as of March 2 totalled $24,856. Frank claimed monthly expenses of $6,268 and outstanding debts of $125,575, including $68,797 in back taxes for the year 1975.

Pursuant to Mary's initial petition for divorce filed in 1972, the trial court had ordered Frank to pay to Mary $1,000 per month in

temporary maintenance and child support. This order was subsequently modified in 1979 to require Frank to pay the greater of either 40% of his net income (where net income was defined as income less taxes and business expenses) or $1,250 per month. The temporary maintenance and child support orders remained in effect until the judgment of dissolution was entered.

At the hearing on March 10, 1981, Mary testified that Frank was $58,427 in arrears on payments due under the trial court's temporary maintenance and support orders. On cross-examination, she acknowledged that during the couple's periods of reconciliation Frank would pay some of the bills and share the household expenses, but she claimed that she gave him credit for such payments in her calculation of the arrearage. Mary kept the record of Frank's payments "in her head."

Frank conceded that he was approximately $15,170 in arrears. He asserted, however, that he had paid the balance of the amounts due under the temporary orders either to Mary or to third parties on her behalf. To substantiate his testimony, Frank produced four cancelled checks totaling $2,005 which had been drawn on his account in 1976 and which were paid to the order of various third parties. One of the checks was signed by Mary, the other three were signed by Frank. The record does not contain any cancelled checks paid to the order of Mary. The record does contain an agreed order of court dated April 25, 1974, which states that as of that date Frank was current in his temporary maintenance and support payments. Mary testified that she had agreed to the order because at the time the couple were attempting to reconcile. She asserted that Frank was actually $3,250 in arrears in 1973 and that he had made no payments to her in 1974.

The trial court, in rendering its judgment, ruled that Frank was not entitled to credit against his alleged arrearage for payments he made to third parties. The trial court found that Frank was $56,000 in arrears and directed him to make arrearage payments to Mary at the rate of $8,000 per year for seven years. The trial court also ordered Frank to pay $2,500 per month in unallocated maintenance and child support. The maintenance and child support payments were deductible from Frank's gross income and includible in Mary's. Additionally, Frank was to defray the cost of any extraordinary medical expenses incurred on behalf of the three children then residing with Mary. Frank was also directed to pay for the children's college education and he was assessed $12,800 in attorneys fees for Mary's attorneys. The marital estate was not substantial and its apportionment is not at issue here.

## I

Frank's first contention is that the trial court abused its discretion in awarding to Mary an excessive amount of maintenance and child support—$2,500 per month. We cannot agree.

Section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(b)) sets forth the appropriate factors to be considered by the trial court in determining the amount of a maintenance award. Among the factors articulated in section 504(b) are the standard of living during the marriage, the duration of the marriage, the age and physical condition of both parties, the financial resources of the party seeking maintenance and the ability of the other spouse to pay. Similarly, section 505(a) sets forth the following factors to be considered in determining the amount of an award of child support: the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the children and their educational needs, and the financial resources and needs of the noncustodial parent.

The amount of an award of maintenance and child support is a matter within the sound discretion of the trial court and the award will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 436 N.E.2d 228.) Such an abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court. *Johnson.*

The trial court in the instant case stated that it considered the statutory factors enumerated above in determining the amount of the maintenance and support award. The record shows that the marriage endured for 23 years. During this time Mary assisted Frank in obtaining his degree in medicine, and she raised the children during his early professional career. Mary does not appear to have much income potential beyond the $1,000 per month she was earning. Frank, however, earns more than 10 times that amount. Mary claimed to have substantial monthly expenses which she could not meet on her salary. She also claimed that she had to borrow $36,000 during the course of their separation in order to meet her expenses. Although there is no evidence regarding the financial resources of the children, we note that the trial court, in determining the amount of child support, considered the standard of living the children *would have enjoyed had the marriage not been dissolved.* In view of Frank's substantial income, the standard of living his children would have enjoyed would have been very comfortable.

Both sections 504(b) and 505(a) direct a trial court, in determining

the amount of the maintenance and child support awards, to consider a spouse's ability to pay. Frank contends that since his net income in 1980 was approximately $40,000, he does not have the ability to pay $2,500 per month in maintenance and child support.

We are not convinced that Frank's representation as to his net income accurately reflects his *ability* to pay under sections 504(b) and 505(a). In 1980 Frank derived income of approximately $150,000 from his medical practice. From this amount he deducted approximately $87,000 in business expenses, including portions of the cost of 11 business trips, depreciation on his car, depreciation on that part of his dwelling which he used as an office, and various "one-time-only" deductions. Although it is unclear from the record, it appears that Frank also deducted as a business expense a salary he paid to one Laura Suit, with whom he lived, for some bookkeeping work. The record also shows that Ms. Suit accompanied Frank on three of his business trips and that although they cohabited, Frank paid all of the rent for their abode. Given these facts the trial court could reasonably have concluded that Frank had more spendable income available to him than the $40,000 he claimed.

■ The amount of the maintenance and support awarded here—$2,500 per month—was approximately 20% of Frank's gross receipts for 1980. The real cost of the award to Frank is diminished because he is able to deduct the amount of the award from his gross income. Moreover, we note the fact that this award is *both* maintenance for Mary and support for two minor children and that in determining the amount of this award the trial court considered the standard of living the children would have enjoyed had the marriage not been dissolved. Under the circumstances we cannot say that the trial court abused its discretion in awarding $2,500 per month in maintenance and child support to Mary.

## II

Frank's second contention is that the trial court's finding and order awarding Mary $56,000 in arrearages was contrary to the evidence. Frank maintains that the trial court erred in refusing to give him credit toward the alleged arrearage for payments he made to third parties. Frank further argues that Mary's testimony regarding the alleged arrearage was unbelievable because the only record she kept of his payments was "in her head."

■ The law is clear that a noncustodial parent may not unilaterally modify a trial court's order awarding temporary maintenance and child support to the custodial parent. (*In re Marriage of Bjorklund* (1980), 88 Ill. App. 3d 576, 410 N.E.2d 890; *Voss v. Voss* (1974), 23 Ill.

App. 3d 312, 319 N.E.2d 72.) The temporary maintenance and child support orders entered in the instant case directed Frank to make payments *to Mary.* The payments Frank made to third parties on Mary's behalf did not strictly comply with the terms of the trial court's order. If we were to allow Frank credit toward the arrearage for such payments, we would be empowering him to unilaterally vary the terms of the trial court's order, and we would be permitting him to usurp Mary's right as custodial parent to determine the manner in which the support money should be spent. Accordingly, we hold that the trial court did not err in refusing Frank credit against his arrearage for payments he made to third parties on Mary's behalf.

■■ The evidence concerning payments which Frank allegedly made directly to Mary was conflicting. Although Frank argues vigorously that Mary's testimony regarding the alleged arrearage was "completely discredited," we note that the trial court as trier of fact is in a superior position to that of a reviewing court to determine the credibility of witnesses, to weigh the evidence and to determine the preponderance thereof especially where the testimony is contradictory. (*Childers v. Childers* (1977), 50 Ill. App. 3d 177, 365 N.E.2d 1141.) In the instant case the trial court believed Mary, and we cannot conclude that the trial court erred in so doing.

### III

Frank's third contention is that in view of his inability to pay, the trial court abused its discretion in ordering him to pay $12,896.90 in attorney fees to Mary's attorneys.

During the nine years in which this proceeding took place, Mary was represented by two attorneys. David Pecyna represented her for the first six years and Rinella and Rinella represented her for the last three years. Frank conceded that both attorneys expended a substantial amount of time on the case. The record contains a detailed account of the time expended by each attorney on this case. Mary's attorneys charged $175 per hour for court time and $125 per hour for office time.

In a dissolution proceeding, an award of attorney fees is left to the sound discretion of the trial court. Generally, in order to justify the allowance of attorney fees, the party seeking them must show his financial inability to pay and the ability of the other spouse to pay. (*In re Marriage of Rogers* (1980), 86 Ill. App. 3d 904, 408 N.E.2d 448; Ill. Rev. Stat. 1979, ch. 40, par. 508(a).) Frank's argument to the contrary notwithstanding, our previous discussion concerning Frank's financial means leads us to conclude that he has the ability to pay the attorney fees assessed here.

■ Frank also maintains that fees of $175 per hour for court time and $125 per hour for office time were "not justified in a case such as this." Frank does not state any reasons for his conclusion that such hourly charges are not justified here. Nor does the record contain any evidence regarding the customary charges for cases of this type. Under these circumstances we affirm the trial court's judgment as to attorney fees.

## IV

Frank's final contention is that the trial court erred in entering a judgment prepared by Mary's counsel which contained orders on issues not present before the trial court. Essentially, Frank's argument here is twofold. First, he argues that the trial court is not permitted to enter a written judgment which varies from the trial court's oral announcement of the judgment. Second, Frank maintains that the trial court abused its discretion in entering orders on issues not presented to the trial court.

■■ ■ Supreme Court Rule 272 provides that "[i]f at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him *** the judgment becomes final only when the signed judgment is filed." (73 Ill. 2d R. 272.) In the instant case the trial court did request that a written judgment be prepared. Under these circumstances, it is established practice for the attorney who obtains the judgment to prepare it and submit it to the judge for approval and entry.[1] Where this procedure is followed, the judge's oral announcement of his decision and the reasons therefor have no effect and the judgment is not the act of the court until it is signed or approved and entered of record. (*Pope v. Pope* (1973), 12 Ill. App. 3d 800, 299 N.E.2d 161; *McKeon v. McKeon* (1955), 4 Ill. App. 2d 515, 124 N.E.2d 564.) In accordance with the aforementioned authorities we hold that where otherwise proper, a trial court may enter a written judgment which varies from the oral announcement of its decision. See also *In re Marriage of Parello* (1980), 87 Ill. App. 3d 926, 409 N.E.2d 461; *Green v. Green* (1974), 21 Ill. App. 3d 396, 315 N.E.2d 324.

Frank next argues that the trial court abused its discretion in entering a written judgment which contained orders on issues not presented before the trial court. Specifically, Frank maintains that the trial court abused its discretion in directing him to defray the cost of any extraordinary medical expenses incurred on behalf of the children

---

[1] In the instant case counsel for both Frank and Mary prepared written judgments and submitted them to the trial court.

because no evidence concerning such expenses was presented to the trial court.

■ In the instant case the lack of evidence regarding extraordinary medical expenses is readily explained by the fact that at the time of dissolution there were no such expenses. This provision of the judgment was intended to allocate the cost of *contingent* extraordinary medical expenses and in our opinion a trial court may, as an adjunct to a parent's child-support obligation, require a parent to bear the cost of any extraordinary medical expenses which might be incurred on behalf of the children. *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17; Ill. Ann. Stat., ch. 40, par. 505(a), Historical and Practice Notes, at 600 (Smith-Hurd 1980).

■ Similarly, we find no abuse of discretion in the trial court's ordering Frank to pay the costs of the children's college education. Section 513 of the Act empowers the trial court to "make such provision for the education *** of the child or children, whether of minority or majority age, out of the property of either or both of its parents as equity may require ***." (Ill. Rev. Stat. 1979, ch. 40, par. 513.) In determining awards under section 513, the trial court is to consider the financial resources of both parents, the financial resources of the child, and the standard of living the child would have enjoyed had the marriage not been dissolved. The record shows that in the instant case the trial court considered these factors and we conclude that the trial court's order requiring Frank to pay the cost of the children's college education was within the scope of its discretion.

In response to Frank's remaining contentions regarding the provisions of the written judgment, we find that the trial court acted within its discretion in ordering that: (1) the payments on the arrearage should commence on December 1, 1981; (2) Mary was responsible for all of the payments on the house; and (3) the maintenance and support payments were deductible from Frank's gross income.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.