**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230579-U

Order filed October 18, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| | ) | Du Page County, Illinois, |
| KATHY BREMER, | ) | |
| | ) | Appeal No. 3-23-0579 |
| Petitioner-Appellant, | ) | Circuit No. 18-D-1073 |
| | ) | |
| and | ) | Honorable |
| | ) | Susan L. Alvarado |
| JAMES BREMER, | ) | Alexander F. McGimpsey |
| | ) | Leah D. Setzen |
| Respondent-Appellee. | ) | Judges, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The issue of whether the court erred by concluding that the transfer of the legal separation case to Du Page County was the enrollment of the judgment of legal separation is moot. The court did not err by determining that the judgment of legal separation did not award permanent maintenance. The circuit court's finding that respondent paid all of his maintenance obligations through 2007 is against the manifest weight of the evidence. The court did not abuse its discretion by finding that respondent's failure to pay maintenance was not contumacious or without compelling cause or justification. The court did not abuse its discretion by limiting respondent's arrearage payment to $120 in its decision on the rule to show cause. Petitioner failed to establish a *prima facie* case of reversible error in

relation to the court's grant of appellee's motion to dismiss her motion to modify maintenance. The court did not abuse its discretion by failing to award petitioner contribution to her attorney fees, refusing to allow her maintenance, and retroactively terminating respondent's prior maintenance obligation.

¶ 2     Petitioner, Kathy Bremer, appeals the Du Page County circuit court's order dismissing her motion to modify maintenance, written opinion and order regarding the rule to show cause, and the judgment of dissolution. Kathy argues that (1) the court erred by concluding that the transfer of the Kane County case to Du Page County constituted the enrollment of her judgment of legal separation; (2) the court's ruling that the judgment of legal separation did not award permanent maintenance was against the manifest weight of the evidence; (3) the court's finding that James paid all of his maintenance payments through 2007 was against the manifest weight of the evidence; (4) the court's ruling that James's failure to pay maintenance was not contumacious or without compelling cause or justification was against the manifest weight of the evidence; (5) the court abused its discretion by limiting James's arrearage payment to $120 per month; (6) the court's order granting James's section 2-619(a)(3) motion to strike and dismiss Kathy's motion to modify maintenance was against the manifest weight of the evidence; (7) the court's denial of Kathy's final fee petition was against the manifest weight of the evidence; (8) the court abused its discretion by retroactively terminating the maintenance obligation as of July 2019; and (9) the court's decision that maintenance was no longer appropriate was against the manifest weight of the evidence. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                          I. BACKGROUND

¶ 4     The parties were married in July 1995. They began living separate and apart in November 2002. Kathy filed a verified petition for legal separation in Kane County in September 2003 (case No. 03-DK-1263). James failed to appear and was found in default. The court entered a

judgment of legal separation on January 8, 2004. The judgment ordered that "Beginning January 15, 2004, [James] shall pay [Kathy] the sum of $605.00 as and for maintenance on or before the 15th day of every month. Said payments shall be made through the State Disbursement Unit pursuant to a Support Order and Notice of Withholding." James was also required to provide medical insurance for Kathy. The Order for Support provided that if James became delinquent in the payment of support that he must pay an additional $120 per month, in addition to the current support obligation, until the delinquency was paid in full. In September 2005, following a motion by Kathy, James was found to have an arrearage balance of $4623.

¶ 5        In September 2005, James filed a petition for dissolution of marriage in Du Page County (case No. 05-D-2081). Kathy filed a counter-petition for dissolution. In December 2006, the Kane County circuit court granted Kathy's motion to transfer the legal separation case (case No. 03-DK-1263) to Du Page County and join it with the dissolution matter (case No. 05-D-2081). The order stated that the Kane County orders "shall be able to be modified and or terminated by the Du Page Court." The dissolution matter was scheduled for trial on May 4, 2007. On that date, the court entered an order dismissing James's petition and Kathy's counter-petition and noting that Kathy failed to appear in court for the trial. In September 2007, Kathy filed a motion to establish spousal maintenance and health insurance in Du Page County, but that motion does not appear to have been heard by the court.

¶ 6        In June 2018, Kathy filed a verified petition for dissolution of marriage in the instant matter. The petition sought an award of permanent maintenance. Kathy then filed a petition to enroll the Kane County judgment of legal separation in Du Page County and motions to enforce and modify the maintenance provisions of the judgment of legal separation, which included a petition for rule to show cause regarding James's alleged failure to pay maintenance. The

3

petition alleged that James had not made any maintenance payments since September 2004. James filed a counter-petition for dissolution. He requested that no maintenance be awarded to either party. James filed a motion pursuant to section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 2018)) to strike and dismiss Kathy's petition to enroll, motion to enforce maintenance/petition for rule to show cause, and motion to modify maintenance. He argued that the Kane County matter had already been transferred to Du Page County in case No. 05-D-2081. James further argued that there was no maintenance obligation, as any obligation was dismissed and terminated when the prior dissolution proceedings were dismissed in 2007. James also argued that the request to modify maintenance in a prior legal separation agreement is improper once a dissolution is filed because, per statute, the maintenance obligation was to be decided *de novo* in the dissolution proceedings. Kathy filed a response arguing that the enrollment petition should not be dismissed because there was no other pending action to enforce the maintenance obligation. She further argued that the maintenance obligation did not terminate upon the dismissal of the prior dissolution proceedings. During a hearing on James's section 2-619 motion, Kathy argued that the motion was improper because section 2-619 motions can only be brought in regard to pleadings and Kathy's enrollment petition and motion to enforce and modify maintenance were motions, not pleadings. James argued that maintenance could not be modified because per statute, unless there was a separation agreement providing for non-modifiable permanent maintenance in the legal separation matter, maintenance issues are to be decided *de novo* in dissolution proceedings.

¶ 7 The court found that the judgment for legal separation had already been transferred and enrolled in Du Page County. The court found that the judgment was therefore already before the court and granted James's motion to dismiss Kathy's enrollment petition. The court then denied

James's motion with regard to the petition for rule to show cause. Last, the court found that pursuant to statute, any maintenance obligations established under a judgment of legal separation that had been merged into a dissolution matter are to be decided *de novo*. The court found that the maintenance obligation was not permanent and non-modifiable, and noted that Kathy herself had asked for modification. The court therefore granted James's motion to dismiss Kathy's motion to modify maintenance and stated "I don't mean to imply here there is no maintenance obligation. Everything is certainly subject to repleading." The court clarified that there was no language in the maintenance award that would prohibit the court from modifying maintenance and therefore, maintenance should be decided *de novo* in the divorce proceedings.

¶ 8        As the court did not dismiss Kathy's motion for rule to show cause, James filed a response, in which he alleged that any failure to pay maintenance was not willful. He also set forth the affirmative defenses of limitation on enforcement, equitable estoppel, and *laches*. Kathy filed a petition for interim attorney fees, seeking $17,141.48 in fees already charged and $10,000 in prospective fees. The court granted the motion and ordered James to pay Kathy's attorney $12,000 for fees incurred and an additional $10,000 for prospective fees.

¶ 9        On July 25, 2019, James filed a motion for order terminating maintenance. He argued that Kathy had cohabitated with Joseph W. Bonea on a resident and conjugal basis and that his obligation to pay maintenance terminated as of the date the cohabitation commenced. The allegations were based upon criminal complaints made by Kathy against Bonea and an order of protection she obtained against Bonea in 2004. Kathy filed a response arguing that it was absurd to conclude that she was living with Bonea on a resident and conjugal basis, based solely on the criminal complaint and order of protection indicating that she and Bonea shared a residence.

¶ 10    Kathy filed a motion to modify her petition to enroll the Kane County judgment of legal separation and motions to enforce and modify maintenance. She indicated there were scrivener's errors as to the amount of arrearage and interest. The court granted this motion and Kathy filed an amended motion. James filed a response and again set forth his affirmative defenses. Kathy filed two stand-alone motions to modify maintenance. In response, James filed motions to strike and dismiss the motions to modify maintenance, as the court had previously dismissed Kathy's request for modification.

¶ 11    The court held an evidentiary hearing regarding the petition for rule to show cause/motion to enforce the maintenance obligation. Initially, the court found that Kathy met her burden of a *prima facie* showing that James failed to comply with the maintenance obligation and obligation to provide health insurance contained in the judgment of legal separation. The court issued a rule to show cause against James. The matter proceeded to hearing on the rule to show cause.

¶ 12    Kathy testified that she and James were married in 1995 and the last time they resided together was November or December 2002. Kathy received government benefits, including Medicare and partial Medicaid, and she likely would not have qualified for the benefits if James had been paying his maintenance obligation. Kathy also received social security disability payments. Bonea was only in her residence one time and she never dated Bonea. The last maintenance payment she received through the State Disbursement Unit was in September 2004. In discussing payments that she received from James, her counsel asked if James paid her $500 and she replied, "I know about the 1811 because I had to collect it at the police station *** But I don't recall if the 500 went into my account or if he gave it to me." An exhibit entered into evidence showed that there was a Kane County order that indicated James paid Kathy $500 on

September 1, 2005, and $1811 on September 18, 2005. This order was dated October 13, 2005, and indicated that James's arrearage balance was $4623. Kathy, at one point, testified that she could not recall if she received payments by money order for $120 from James, but at another point denied receiving such payments. Kathy testified that James never provided her with medical insurance subsequent to the judgment of legal separation.

¶ 13    James testified that he has not resided with Kathy since 2002. James was aware that the judgment of separation required him to provide medical insurance to Kathy, but he did not do so. James admitted on cross-examination that such failure would be a willful violation of the judgment. James acknowledged there was an order entered in the Kane County matter that found he owed certain monies to Kathy, and he testified he paid those monies to Kathy. James was shown an order transferring the Kane County case to Du Page County and joining case Nos. 03-D-1263 and 05-D-2081. His understanding of that order was that everything was then combined into one case in Du Page County. When his 2005 dissolution petition was dismissed, he was not represented by an attorney. He understood the dismissal order to mean that the separation and the divorce proceedings were dismissed and that he no longer had an obligation to pay Kathy maintenance or provide her with health insurance. He did believe he still owed the arrearage, and he continued to pay Kathy until the arrearage was satisfied. James's counsel showed him a notice of motion filed by Kathy, which stated the motion was to establish spousal maintenance and health insurance in Du Page County. James understood that to mean that there was no current spousal maintenance or obligation to provide insurance, and that Kathy was trying to establish such obligations. James testified that the last time he paid maintenance to Kathy was in 2007, but he did not know when in 2007. James made some payments directly to Kathy. James identified an exhibit shown to him by his counsel as receipts for money orders that were made out to Kathy

7

to pay the arrearage he had owed. The receipts were dated from March 2006 through September 2007. The money orders were for $120, and he gave them to Kathy. James could not remember how he gave the money orders to Kathy. He did not know if he had all the receipts. The receipts did not indicate that the payments were made to Kathy or the State's Disbursement Unit.

¶ 14         Following testimony and setting forth a schedule for written closing arguments, the court heard argument as to James's motion to strike and dismiss Kathy's motion to modify maintenance. James argued that the court had already struck and dismissed Kathy's request to modify maintenance, and she was trying to file the same request again. He argued that the court previously dismissed the request because once the dissolution proceedings started, any maintenance obligation would be decided *de novo* in the dissolution proceedings, such that modification of the maintenance obligation contained in the judgment of legal separation was improper. Upon questioning by the court, Kathy's counsel confirmed that there was no substantive difference between her current motion to modify maintenance and her original one that the court struck and dismissed. The court could not recall its reasoning for granting a 2-619 dismissal of Kathy's original motion to modify maintenance but noted that it was the same motion to modify as the one before the court now. The court acknowledged that section 2-619 might not be the proper vehicle to dispose of the current motion but stated that once the court has ruled on something, a party cannot keep filing the same motion over and over again. The court declined to rule on James's pending section 2-619 motion to dismiss but instead found Kathy's motion to be improper and struck the motion. The court granted leave for Kathy to refile if there was a substantial change in circumstance since the court dismissed the original motion to modify. The court also noted that there were ways for Kathy to have the issue regarding the

8

amount of maintenance heard without continuing to file motions to modify, as they were in the pre-decree stage of a dissolution proceeding.

¶ 15        Following submission of the parties' written closing arguments, the court filed its written opinion and order on August 12, 2021.[1] The court rejected James's affirmative defenses of *laches* and equitable estoppel. As to Kathy's alleged cohabitation with Bonea, the court found Kathy neither credible nor persuasive but determined that the evidence did not establish that there was an ongoing conjugal relationship between Kathy and Bonea. The court found James's testimony that he made the payment of $500 and monthly payments of $120 toward an arrearage to Kathy to be credible. The court noted that a reference in one of Kathy's *pro se* motions indicated she was receiving $120 per month directly from James, which supported the court's conclusion that James's testimony in this regard was credible. The court determined that James had paid his previously determined arrearage. The court noted James's testimony that he believed his maintenance obligation had been terminated when the 2005 dissolution petitions were dismissed. The court found that James was forthcoming and honest in his testimony, but that Kathy's testimony was often not credible. The court found that James's failure to provide medical insurance was willful but that since Kathy had government-provided medical insurance at that time, there was no appropriate purge provision to cure James's failure to provide medical insurance. It further found that James's belief that maintenance was terminated upon the 2007 dismissal of the 2005 dissolution proceedings was a good faith belief and that therefore, his failure to comply with the maintenance obligation was willful but not contumacious or without compelling cause or justification. The court also found that James satisfied his previously adjudicated arrearage via payments directly to Kathy. Additionally, the court found that James

---

[1]This order contained a handwritten date of July 8, 2021, but was file-stamped August 12, 2021.

9

made his last maintenance payment to Kathy in 2007. The court ordered that the rule to show cause was dissolved, James owed an arrearage for unpaid maintenance installments in the amount of $605 commencing January 2008 through the present, and that in accordance with the judgment of legal separation, the arrearage was to be paid to Kathy in the amount of $120 per month in addition to any current maintenance obligation. Kathy filed a motion for reconsideration. The court struck the motion as violating local rules.

¶ 16   James filed a supplemental petition to terminate maintenance and for other relief on February 24, 2022. He argued that the maintenance that was awarded was not permanent and that there was a substantial change in circumstances, as Kathy demonstrated she had been self-supporting in excess of 11 years. Kathy filed a section 2-619 motion to dismiss and a response.

¶ 17   Kathy filed a motion for entry of judgment on the amount of James's arrearage and demand for immediate payment of maintenance arrearage. She also filed a motion for modification of maintenance and petition for rule to show cause for failure to pay post 2007 maintenance. Kathy provided a calculation for the amount of arrearage, plus interest she believed was owed per the court's August 12, 2021, order.

¶ 18   The matter ultimately went to trial in front of Judge McGimpsey on the dissolution petitions at the end of 2022 and beginning of 2023. The record does not contain transcripts of the trial.

¶ 19   On January 17, 2023, Kathy filed a final fee petition seeking an order requiring James to pay $99,022.83 in attorney fees. James filed a response arguing the fees were exorbitant and not necessary or reasonable in light of the minimal issues in the case. The court held a hearing on the petition. It noted that the factors it found most applicable were the relative assets, income, and needs of the parties, as it relates to the issue of whether or not contribution of attorney fees

10

would be appropriate. The court noted that the trial was a very limited issue, whether or not maintenance should continue. The court did not believe the limited issue justified the nearly $100,000 in attorney fees incurred. The court further noted that there had already been an order for contribution by James regarding Kathy's attorney fees in an amount in excess of $20,000. The court noted that Kathy's needs were significant and that it did not deny she was suffering from various ailments and receiving social security disability. It further noted that when maintenance was not being paid, Kathy was receiving government assistance. The court acknowledged that pursuant to its oral ruling following trial, Kathy would continue to receive $725 a month from James as payment of his arrearage and that would likely continue ad infinitum to satisfy the arrearage. The court stated that Kathy receives approximately $2300 per month and that James earned approximately $107,000 a year. The court believed that the most important factor in this matter was the assets of the parties, which it noted were not significant. The court noted that James had a $95,000 house, two very old vehicles with no indication of value, and a very modest retirement fund. The court did not believe the retirement fund was an appropriate asset to look to in terms of contribution of attorney fees. The court also did not believe there were significant assets from which to award any additional contribution to attorney fees. The court noted that it considered all of the factors under sections 503 and 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503, 504 (West 2022)) and that neither party had any appreciable assets from which to provide contribution. The court determined that no further contribution to attorney fees would be appropriate. The court denied Kathy's petition. Kathy filed a motion for reconsideration, which the court later denied following a hearing. In doing so, the court noted that it considered the factors under section 503(d) of the Act, the income of the parties, the relative assets and liabilities of the parties, the needs of the

11

parties and the economic circumstances of the parties. The court further noted it had considered the limited issues at trial, the prior contribution award, and that James's arrearage payments will continue for a long time. The court found that it looked heavily at the income, and particularly the assets of the parties, in denying the motion for attorney fees and the court determined that its original ruling was supported by the factors.

¶ 20 On June 7, 2023, the court issued a written judgment of dissolution of marriage. The court found that Kathy was 61 and James was 59. The parties were married on July 1, 1995, and had lived separate and apart since November 2002. After equally splitting the only marital property—one or more shares of stock, the court set forth that the only remaining issue was "that of maintenance, being whether, and to what degree, maintenance is appropriate under the circumstances of this case. More specifically, the question under the unique circumstances of this case, given the prior maintenance order in the Kane County Judgment of Legal Separation and this Court's Order of 8/12/21 reaffirming the validity of that maintenance obligation, is whether maintenance should continue to be ordered and, if so, in what amount." The court noted that it considered the factors in section 504(a) of the Act and found that factors 1, 2, 3, 7, 8, 9 and 14 were particularly relevant. The court set forth that Kathy's income consisted of $1543 per month in social security disability payments and $725 per month in the previously ordered maintenance and arrearage payments. Kathy had no assets. James's income at the time of legal separation in 2004 was $35,000 per year but was currently $107,000 per year. James's assets consisted of a home purchased for $95,000, two older vehicles and a 401(k) account worth $31,000. The court considered James's assets to be of modest financial value. As to the needs of the parties, the court noted that Kathy presented testimony that she was permanently disabled and receiving social security disability payments which she had been receiving even prior to her separation

12

from James. Kathy also received SNAP benefits and housing assistance through HUD, but that SNAP was discontinued after receiving the $725 monthly payments from James and HUD was terminated following a dispute about rule compliance. The court noted that James had a minimal estate of assets while approaching retirement age. The court stated it considered the needs of the parties, including that Kathy was able to live and provide for herself during the substantial period of time when James was not paying maintenance.

¶ 21        As to the parties' earning capacities, the court found that Kathy was unemployed with no prospect for future employment given her disability status. It also found that James was able to provide for himself currently but will likely be required to pay the $725 monthly maintenance arrearage for a substantial, possibly indefinite, period even though he had minimal assets and was approaching retirement age. The court found that the parties were married less than nine years before legally separating. At the time of separation Kathy had no income and James was earning $35,000 a year. The court determined that the marital standard of living was modest if not minimal. The court then considered other relevant factors inherent in the case and noted that the case presented unique facts and circumstances related to maintenance. Specifically, the court noted that the parties separated 19 years prior and maintenance had been ordered in 2004. The court noted the prior order dated August 12, 2021, finding that James was in arrears for maintenance from January 2008 to the present. The court found that the maintenance obligation far exceeded the length of the marriage up to separation, which was a result of neither party taking action to clarify or enforce the maintenance obligation between 2008 and 2018. The court determined that from a practical standpoint, James's responsibility for the maintenance arrearage will require an indefinite or permanent monthly payment of $725 due to the interest accrual.

13

¶ 22      Based upon its consideration of the factors and the evidence presented at trial, the court found that continuing maintenance would not be appropriate under the law or the facts of the case and that the obligation would be terminated as of July 25, 2019, the date James filed his motion to terminate maintenance. The court continued that the judgment did not alter the prior ruling of August 12, 2021, which required James to continue paying $725 per month to Kathy to satisfy the maintenance arrearage and interest. The court ordered that the payments of $725 per month were to continue until the arrearage from January 2008 until July 19, 2019,[2] was satisfied. The court also reaffirmed its prior ruling denying any further contribution of attorney fees. The court granted dissolution.

¶ 23      On July 5, 2023, Kathy filed a motion for reconsideration of the court's judgment of dissolution. Kathy challenged the court's denial of maintenance and termination of the previously ordered maintenance obligation as of July 25, 2019. Kathy also challenged the court's denial of her petition for contribution of attorney fees. James filed a response. The court held a hearing and heard argument on the matter on August 18, 2023. Judge Leah Setzen advised that, based upon some of the allegations in the motion, review of the transcripts would be helpful as she was not the judge who conducted the prior proceedings. Specifically, the court indicated that there were a lot of factual allegations and that she was unable to determine if they were being made for the first time or if they had been made at trial. The court gave Kathy an opportunity to supplement the motion for reconsideration with the transcripts. Ultimately, Kathy filed a document entitled Response to the Court's Request for Transcripts in which she alleged transcripts were unnecessary. The court provided a ruling on the motion for reconsideration during a hearing on October 3, 2023. The court first held that a *de novo* decision on maintenance

---

[2]The date appears to be an error, as it was previously listed as July 25, 2019, which was the date that James filed his motion to terminate maintenance.

14

was properly made in the judgment for dissolution and the court properly applied section 504 of the Act. The court found no error in the termination of maintenance or the order for continuing payments of $725 per month until the arrearage was satisfied. The court rejected all of Kathy's arguments and requests, except her request to resume using her former name. Kathy appeals.

¶ 24                                             II. ANALYSIS

¶ 25        Initially, we note that James has not filed an appellee's brief. When an appellee's brief is not filed, the court (1) may act as an advocate for the appellee if justice requires; (2) should decide the merits of the appeal "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief"; or (3) may reverse the trial court "if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 26        Kathy first argues that the court erred as a matter of law by concluding that the transfer of the Kane County case (case No. 03-DK-1263) "to DuPage County constituted the enrollment of Kathy's enrollment petition." She appears to be arguing that the court should have granted her motion to enroll the Kane County judgment of legal separation instead of determining that the judgment was already enrolled based upon the transfer of the Kane County case to Du Page County. We decline to consider this issue because it is moot, as the court considered and enforced the Kane County judgment of legal separation and James has not appealed the court's decision in that regard. See *e.g.*, *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999) ("[W]hen an opinion on a question of law cannot affect the result as to the parties or controversy in the case before it, a court should not resolve the question merely for the sake of setting a precedent to govern potential future cases.").

15

¶ 27     Kathy next argues that the court's ruling that the judgment of legal separation did not award permanent maintenance was against the manifest weight of the evidence. Here, the court's decision that the maintenance award in the judgment of legal separation was not permanent was made in the context of the underlying dissolution proceedings. "Absent an agreement set forth in a separation agreement that provides for non-modifiable permanent maintenance, if a party to a judgment for legal separation files an action for dissolution of marriage, the issues of temporary and permanent maintenance shall be decided de novo." 750 ILCS 5/402(c) (West 2018). Since Kathy, a party to a judgment for legal separation, filed an action for dissolution of marriage, *i.e.*, the instant matter, the issue of maintenance was to be decided *de novo* unless there was a separation agreement providing for non-modifiable permanent maintenance. There was no such separation agreement in this matter. Thus, we cannot say the court's determination that the maintenance awarded by the judgment of legal separation was not permanent was against the manifest weight of the evidence.

¶ 28     Third, Kathy argues that the court's finding, in relation to the rule to show cause, that James paid all of his maintenance payments through 2007 is against the manifest weight of the evidence. We find that Kathy has demonstrated *prima facie* reversible error in this regard. Specifically, the court did not set forth its reasoning for determining that the arrearage obligation would start as of January 2008, thereby implicitly finding that James had paid the maintenance through 2007. Further, the evidence, as accepted by the court, showed that James made payments towards the previously adjudicated arrearage and through those payments of $120 he paid off the previously adjudicated arrearage. See *e.g.*, *In re Marriage of Dwan*, 108 Ill. App. 3d 808, 814 (1982) ("[T]he trial court as trier of fact is in a superior position to that of a reviewing court to determine the credibility of witnesses, to weigh the evidence and to determine the preponderance

16

thereof especially where the testimony is contradictory."). However, there does not appear to have been any evidence presented that James was also paying the actual maintenance obligation of $605 per month that was owed during that time. James testified he made his last maintenance payment in 2007 and the court credited this testimony, but it was unclear if he was talking about the arrearage payment or the actual maintenance obligation. Regardless, James testified he did not believe he had any maintenance obligation after May 2007 when the 2005 dissolution petitions were dismissed, such that the last possible maintenance payment the court could have credited him for based on the evidence would have been on or before May 2007. It is unclear what time period the arrearage that James paid off encompassed but appears to likely have been through sometime in 2005, as that is when the court had adjudicated his arrearage amount. Thus, the evidence did not support starting the arrearage obligation as of January 2008. Therefore, we reverse that finding and remand the matter for further proceedings to determine the proper date, supported by the evidence, through which James had paid his maintenance obligation or, in other words, on which to commence the arrearage obligation. On remand, the court should also calculate the total arrearage, with interest, owed because it appears, based upon the record before us, that was not previously done.

¶ 29        Next, Kathy argues that the court's ruling regarding the rule to show cause, that James's failure to pay maintenance was not contumacious or without compelling cause or justification is against the manifest weight of the evidence. As stated above, the circuit court is in a better position to determine credibility and weigh the evidence. See *id.* Here, the court found James credible that he believed the dismissal of the dissolution proceedings in 2007 terminated any obligation to pay maintenance. The court further found that this was a good faith belief, such that the failure to pay maintenance was not contumacious or without compelling cause or

17

justification. James did not have an attorney at the time of the dismissal of the dissolution proceedings and there is no indication he has any legal training. Moreover, at that time, the legal separation matter, which provided the maintenance obligation, had been consolidated into the dissolution proceedings. Based on these facts and the court finding James credible, we cannot say the court abused its discretion in finding that James had a good faith belief that his maintenance obligation was terminated and therefore, discharging the rule to show cause. See *In re Marriage of Berto*, 344 Ill. App. 3d 705, 712 (2003) ("A reviewing court will not overturn a trial court's decision to discharge a rule to show cause absent a clear abuse of the trial court's discretion.").

¶ 30　　　　Kathy also argues that the court's ruling on her petition for rule to show cause, limiting James's arrearage payments to $120 per month, is an abuse of discretion. However, the order for support which entered along with the judgment for legal separation specifically set forth that arrearages were to be paid at $120 per month and therefore, this argument fails. Further, this issue appears to be moot as the court, in the dissolution judgment, ordered James to pay $725 per month towards the arrearage.

¶ 31　　　　Kathy further argues that the court's order granting James's section 2-619 motion to strike and dismiss Kathy's motion to modify maintenance was against the manifest weight of the evidence. Her argument in this regard is difficult to follow and we conclude that she has failed to demonstrate *prima facie* reversible error. We note that she does argue that reliance on section 2-619(a)(3) was improper, as there were not two pending cases. See 735 ILCS 5/2-619(a)(3) (allowing dismissal when there is another action pending between the same parties for the same cause) (West 2018). However, although James's motion cited section 2-619(a)(3), the court did not cite to that section in making its decision and instead explained its reasoning that section

18

402(c) of the Act required that maintenance be decided *de novo*. This reasoning would fall under another subsection of section 2-619, which provides for dismissal when the claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." See 735 ILCS 5/2-619(a)(9). Kathy also argues that the court's reliance on section 402(c) of the Act was against the manifest weight of the evidence, as the 2007 order dismissed the parties' dissolution proceedings, such that there was no dissolution action pending for the issuance of maintenance. However, at the time Kathy sought modification, the current dissolution proceedings were pending and section 402(c) was applicable. See 750 ILCS 5/402(c) (West 2018) ("Absent an agreement set forth in a separation agreement that provides for non-modifiable permanent maintenance, if a party to a judgment for legal separation files an action for dissolution of marriage, the issues of temporary and permanent maintenance shall be decided de novo."). Kathy has failed to provide any rationale for finding the court's reliance on section 402(c) was reversible error. While Kathy makes some argument that the motion to modify was a motion, such that a section 2-619 was inapplicable as it only applies to pleadings, we find no reversible error in this regard. Whether the motion was dismissed or denied based upon section 402(c), the outcome—modification of maintenance being denied due to section 402(c)'s requirement that maintenance be decided *de novo*—is the same. Any error in calling it a dismissal rather than a denial is therefore harmless.

¶ 32          Kathy next argues that the denial of her final fee petition seeking contribution of fees was against the manifest weight of the evidence. Section 503(j) of the Act provides for the court to decide a petition for contribution to fees and costs and subsection (2) states that "Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an

19

award of maintenance under Section 504." 750 ILCS 5/503(j)(2) (West 2022). The factors for division of marital property are set forth in section 503(d) of the Act and include, *inter alia*, the duration of the marriage, the relevant economic circumstances of the spouses, and the age, health, station, occupation, amount and sources of income, employability, liabilities, and needs of each of the spouses. *Id.* § 503(d). The statutory factors "provide[] a framework within which to compare the relative means of the parties to pay their attorney fees." *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 49. This court reviews the circuit court's ruling on a petition for contribution to attorney fees for an abuse of discretion. *In re Marriage of Buonincontro*, 2022 IL App (2d) 210380, ¶ 41. " 'An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Id.* quoting *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24. Any fees awarded must be reasonable. *Buonicontro*, 2022 IL App (2d) 210380, ¶¶ 44-47.

¶ 33 Here, Kathy focuses on the factors in section 504, however, because the court did not award maintenance in the dissolution judgment, section 503(j) indicates that the factors to be considered are those in section 503(d), although we acknowledge some of the factors are the same or similar. The record in this matter shows that the court considered the appropriate factors as it set forth its findings on the factors it believed most relevant and stated that it considered the factors both in the initial hearing and at the hearing on Kathy's motion to reconsider. Although Kathy is correct that the "limited nature of the case" is not one of the applicable factors and neither is a prior interim award of fees, consideration of prior fees paid and the nature of the case are relevant in determining the reasonableness of the attorney fees and also the other party's ability to pay. Specifically, the fact that the sole contested issue was limited to the payment of maintenance would be relevant to determining if the amount of attorney fees were reasonable or

20

exorbitant. Additionally, the fact that James already paid $22,000 in contribution to Kathy's attorney fees could have an impact on his ability to pay any additional sums and also factors into the analysis of whether the additional attorney fees sought are reasonable, as it helps show the total amount of attorney fees incurred. Additionally, although Kathy points to the substantial fees James paid his own attorney as support that her attorney fees were reasonable, the fact that James paid such amounts for his own attorney fees factors in to whether he has the ability to pay her attorney fees as well, especially considering the court found that he had limited assets. Based on the record before us, we cannot say that the court's decision to deny Kathy's request for contribution to her attorney fees was arbitrary, fanciful, unreasonable, or that no reasonable person would come to the same decision. Thus, the court did not abuse its discretion by denying her section 503(j) petition for attorney fees.

¶ 34        Last, Kathy argues that the court's analysis of the section 504(a) factors to conclude maintenance was no longer appropriate was against the manifest weight of the evidence and that the retroactive termination of James's maintenance obligation to July 2019 was an abuse of discretion. Section 504(a) of the Act provides that the court must make a finding as to whether a maintenance award is appropriate after consideration of various factors. 750 ILCS 5/504(a) (West 2018). "A trial court's decision as to maintenance will not be reversed on appeal absent an abuse of discretion." *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1062 (2005). "[I]t is not for this court to reweigh the statutory factors, and absent an abuse of discretion, we will not substitute our judgment for that of the trial court." *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 80. "Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently, but whether any reasonable person could have taken the position adopted by the trial court." *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 708 (2006).

21

¶ 35        Here, contrary to Kathy's arguments, no change in circumstances was required to be shown for the court to deny maintenance/terminate the maintenance obligation contained in the judgment of legal separation because once Kathy filed the petition for dissolution, any maintenance obligations were to be decided *de novo* in the dissolution proceeding according to section 402(c) of the Act. See 750 ILCS 5/402(c) (West 2018). Notably, Kathy requested an award of permanent maintenance in her dissolution petition, indicating that the issue of maintenance was to be decided in the dissolution proceeding. Thus, the court properly considered the section 504(a) factors without first considering whether a change in circumstances occurred. Second, the record makes clear that the court considered and weighed the section 504(a) factors. Kathy essentially asks this court to reweigh those factors, which this court will not do. Kathy specifically faults the court for not properly considering the length of the marriage, as the parties were married for 29 years but the court only considered the less than nine years they lived as a marital unit prior to the judgment of legal separation. However, Kathy cites no authority that the court cannot, in its discretion, consider the actual length of time the parties lived in marital unity, rather than separate and apart, in its consideration of the length of the marriage and we see no reason the court would be prohibited from doing so. After reviewing the record, we cannot say that the court abused its discretion by determining that an award of maintenance was not appropriate under the circumstances of this extensively litigated and unique case.

¶ 36        Further, the court did not abuse its discretion by retroactively terminating the maintenance provided for in the judgment of legal separation as of July 2019. Notably the court chose that date as that is when James filed his motion for termination of maintenance. However, arguably the court could have determined that no maintenance obligation existed as of the filing

22

of the dissolution petition, as section 402(c) of the Act provides that maintenance is to be decided *de novo* in the dissolution proceedings. That argument is not before this court and therefore we make no determination in that regard. However, that does highlight how the court's decision to choose the date that James filed his motion to terminate was not an abuse of discretion. Regardless, section 510(a) of the Act provides that "the provisions of any judgment respecting maintenance *** may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2018). Thus, even if the court was constrained by this provision rather than deciding the issue *de novo*, the court acted properly by only terminating maintenance from the date that James moved to terminate.

¶ 37    In sum, we affirm the circuit court in all respects other than its finding that James's arrearage obligation began as of January 2008. The record does not support a finding that James had paid the maintenance obligation through December 2007 and thus, we remand the matter for the court to determine the proper date through which James had satisfied his maintenance obligation and thus, his arrearage began to accrue. We also direct the circuit court to calculate the total amount of arrearage, including interest.

¶ 38                               III. CONCLUSION

¶ 39    The judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and the matter remanded for further proceedings.

¶ 40    Affirmed in part and reversed in part.

¶ 41    Cause remanded.

23